**In re CHATEAUGAY CORPORATION, Reomar, Inc., The LTV Corporation, et al., Debtors.**

**The LTV CORPORATION, for itself and on behalf of all affiliated debtors in these cases, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE, Defendant.**

Nos. 92 Civ. 3394 (KC), 92 Civ. 3395 (KC).

United States District Court, S.D. New York.

Oct. 19, 1992.

---

Thomas E. Biron, Blank Rome Comiskey & McCauley, Philadelphia, Pa., Karen E. Wagner, Davis Polk & Wardwell, Michael J. Crames, Kaye Scholer Fierman Hays & Handler, New York City, Frank Cummings, Leboeuf Lamb Lieby & Macraw, Washington D.C., Mark A. Speiser, Stroock & Stroock & Lavan and Donald L. Kuba, Warshaw Burstein Cohen Schlesenger & Kuh, New York City, for plaintiff.

Richard W. Mark, Chief, Civ. Div., U.S. Atty's Office, S.D.N.Y., New York City, for defendant.

## OPINION AND ORDER

CONBOY, District Judge:

The Internal Revenue Service ("IRS") has asserted excise tax claims under 26 U.S.C. § 4971 against the LTV Corporation ("LTV") for three separate years, 1984, 1985, and 1986. LTV seeks to expunge the tax claims as invalid under the automatic stay of the Bankruptcy Code (11 U.S.C. § 362(a)(5)). In the alternative, LTV seeks to subordinate the § 4971 excise tax claims to the claims of general unsecured creditors. The IRS maintains that the excise tax claims are valid and should neither be expunged nor subordinated. For the reasons set forth below, the Court expunges the IRS tax claims for each of the three years.

## BACKGROUND

LTV moved for summary judgement in the Bankruptcy Court, seeking to disallow and expunge, or, in the alternative, equitably subordinate claims filed by the IRS for excise taxes arising under 26 U.S.C. § 4971. The government responded to LTV's motion by cross-moving for an order dismissing the adversary complaint for failure to state a claim.

The IRS claims concern excise taxes owed for 1984, 1985, and 1986 due to LTV's failure to fund pension plans it sponsored in accordance with the minimum standards imposed by 26 U.S.C. § 412. Section 4971 imposes this excise tax based upon "the accumulated funding deficiency under the plan, determined as of the end of the plan year...." 26 U.S.C. § 4971(a).[1] The excise tax is designed to encourage compliance with the minimum funding standards set by 26 U.S.C. § 412.

LTV does not challenge the amount of the IRS claims. Instead, the Debtor contends that the claims should be entirely disallowed or subordinated because they do not represent a legitimate tax claim.

Ruling from the bench, Judge Lifland for the Bankruptcy Court rejected LTV's application to disallow or expunge the claims. The Bankruptcy Court did, however, subordinate the excise tax claims. It ruled that the taxes at issue constituted penalties that should be equitably subordinated. The Court reasoned that Congress' "excise tax" label was not dispositive and that courts could look into the purpose behind the exaction to determine its true nature. The Final Order granted LTV's motion to subordinate the IRS excise tax claims "to all general non-subordinated unsecured claims and to inter-company claims to the extent

not subordinated or extinguished." Final Order, dated April 14, 1992.

The IRS has appealed the Final Order of the Bankruptcy Court with respect to its subordination of the excise tax claims. LTV has cross-appealed the Bankruptcy Court's decision not to expunge the excise tax claims altogether.[2]

## DISCUSSION

In deciding whether or not to expunge the § 4971 excise tax claims, this Court must determine when the taxes accrued. If the taxes accrued post-petition, and they do not qualify as administrative expenses under 11 U.S.C. § 503, they should be expunged under the "automatic stay" mandated by 11 U.S.C. § 362(a)(5) ("... a petition ... operates as a stay, ... of ... any act to create, perfect, or enforce any lien against property of the estate ..."). *See* *In re Parr Meadows Racing Association, Inc.*, 880 F.2d 1540, 1544 (2d Cir.1989), *cert. denied*, 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990). In making this determination, the Court looks to the language and legislative history of ERISA (26 U.S.C. § 412) and the excise tax statute (26 U.S.C. § 4971) to determine when Congress intended the tax to accrue.

### A. 1984 EXCISE TAX LIABILITY:

■ The IRS asserts a "contingent claim" theory to support its position that the 1984 tax liability arose pre-petition. On June 17, 1985, LTV applied to the IRS for a waiver of minimum funding obligations with respect to three of its largest pension plans for plan year 1984. On November 1, 1985, the IRS granted a conditional waiver, under 26 U.S.C. § 412(d), to LTV for its 1984 contributions to three of its pension funds (Letter from Ira Cohen to Frank Cummings, dated November 1, 1985). The

---

1. The excise tax has two components. Section 4971(a) imposes an Initial Tax calculated for the years at issue at 5% of the underfunding to the pension plans (or 5% of the "accumulated funding deficiency"). Section 4971(b) imposes an Additional Tax of 100% of the deficiency unpaid after the statutory correction period has elapsed. 26 U.S.C. § 4971(a) and (b). The IRS has indicated that it will not press its claim for the Additional Tax here, but will instead seek to resolve it as part of a confirmed plan of reorga-

nization (Brief of IRS, p. 8, fn. 6). For this reason, the Court addresses only the Initial Tax claim under § 4971(a).

2. Both the appeal and the cross-appeal involve questions of law subject to *de novo* review by this Court. *See Shugrue v. Air Line Pilots Association, International,* 922 F.2d 984, 988 (2d Cir. 1990).

Bankruptcy Code empowers the Secretary of the Treasury to grant waivers to employers unable to satisfy the minimum funding standard for a plan year because of "temporary substantial business hardship." 26 U.S.C. § 412(d)(1). The 1984 waiver required LTV to make monthly payments into the plans to amortize the funding deficiency over a period of fifteen years. If LTV failed to abide by these conditions, the waiver was, by its own terms, "retroactively null and void" (Letter from Ira Cohen to Frank Cummings, dated November 1, 1985).

It is undisputed that LTV abided by the terms of the waiver until it filed for bankruptcy on July 17, 1986. Thereafter, LTV stopped making payments to meet the waiver's conditions, and, consequently, the IRS retroactively cancelled the waiver granted for plan year 1984 for all three of the plans and notified LTV that it was subject to excise tax penalties imposed under § 4971 of the Internal Revenue Code (Letter from Martin Slate to Frank Cummings, dated November 12, 1986).

The IRS maintains that LTV's excise tax liability arose pre-petition as a "contingent claim." According to the IRS, LTV's failure to make its required monthly payments triggered the previously-accrued excise tax debt. The IRS explains its "contingent claim" theory in its Reply Brief:

> Just as a plan sponsor remains liable for the full amount of the accumulated funding deficiency during the amortization period, the excise tax exists during that same time as a contingent liability imposed by statute subject to elimination if the conditions of the waiver are fulfilled. Failure to meet a waiver condition does not create a new liability: it merely triggers the taxpayer's obligation to pay a previously-accrued tax debt.

Reply Brief of IRS, p. 6. According to the IRS, the waiver does not postpone excise tax liability. Liability exists as of the end of the funding year for which the waiver was granted. The waiver merely affords its recipient the opportunity to avoid paying the tax by abiding by the conditions of the waiver. According to the IRS, the post-petition failure of LTV to fulfill the waiver's conditions relates back to the end of the plan year for which the waiver was granted, and thus the accrual of tax liability is a pre-petition event.

A determination of when the 1984 tax arose requires an analysis of the excise tax statute, 26 U.S.C. § 4971, and ERISA, 26 U.S.C. § 412. Internal Revenue Code § 4971 imposes a tax on "the amount of the accumulated funding deficiency under the plan, determined as of the end of the plan year . . . ." U.S.C. § 4971(a). Thus, in the absence of an accumulated funding deficiency, no § 4971 excise tax liability can arise. Whether or not a pension plan has an accumulated funding deficiency is determined under 26 U.S.C. § 412. The minimum funding standards under ERISA require the establishment of a funding standard account, which is in effect a balance sheet, to which there are annual charges and credits. 26 U.S.C. § 412(b). An accumulated funding deficiency exists, if the total charges to the funding standard account exceed the total credits to the account. 26 U.S.C. § 412(a). Charges include such items as the normal cost of the plan for the plan year, the annual installment for the amortization of past service liabilities, and amounts necessary to amortize waived funding deficiencies. 26 U.S.C. § 412(b)(2). Credits include such items as employer contributions for the plan year and the amount necessary to amortize net investment and experience gains. In addition, 26 U.S.C. § 412(b)(3)(C) specifically provides for a credit to the funding standard account of the amount of any waived funding deficiency for the plan year. Thus, when the IRS grants a waiver pursuant to U.S.C. § 412(d) for a plan year, the amount of the waived funding deficiency is credited to the funding standard account for that year.

LTV was granted waivers for the 1984 plan year for three of the LTV Steel pension plans in the aggregate amount of approximately $175 million. In addition, at the time of the filing, LTV was in compliance with the terms of the waiver and up to date on its payments to amortize the waived funding deficiency. After crediting

the $175 million to the funding standard account, as provided in 26 U.S.C. § 412(b)(3)(C), there was no excess of total charges over total credits to the funding standard account as of the end of the 1984 plan year for any LTV sponsored plan. Thus, there was no accumulated funding deficiency for any LTV plan as of the end of the 1984 plan year. Section 4971(a) imposes an excise tax penalty of five percent on the amount of the accumulated funding deficiency. Five percent of zero is zero. Since there was no accumulated funding deficiency for the plan year 1984 as of the date of the filing, the § 4971 tax claim did not arise pre-petition.

■ The IRS cites the language of the waiver to support its contention that the excise tax liability arose pre-petition. The LTV waiver contained a proviso for its own nullification: "If any condition is not satisfied for a plan, the waiver for such plan shall be retroactively null and void" (Letter from Ira Cohen to Frank Cummings, dated November 1, 1985). Even were the language of this proviso unambiguous with respect to fixing the accrual date of the tax, the waiver's conditions cannot change the clear meaning of the Internal Revenue Code. Under § 412 of the Code, a waiver counts as a credit to the funding standard account, and when the credits to the account equal the charges, there is no accumulated funding deficiency. 26 U.S.C. § 412. Where there is no accumulated funding deficiency, there is no excise tax liability. The Secretary of the Treasury cannot use the device of the waiver to backdate the accrual date of an excise tax to a time when, by the terms of the Internal Revenue Code itself, the excise tax did not exist. 26 U.S.C. § 412(a) and (b).

The Secretary may have the discretion to reject waiver applications and attach conditions, but once he grants the waivers he cannot water down or modify the statutory protection. With its contingent claim theory, the IRS is attempting to create a legal fiction to qualify the excise tax as a valid pre-petition claim. For the purposes of bankruptcy, though, for a "claim" to exist, there must attach to that claim a "right to payment." 11 U.S.C. § 101(4)(A). The IRS never had this right to payment with respect to the 1984 waiver, because no excise tax existed before LTV's filing. The excise tax accrued post-petition, when the IRS revoked the waiver in response to LTV's non-compliance, creating an accumulated funding deficiency. As a post-petition excise tax, the IRS § 4971 claim should be expunged under the automatic stay mandated by 11 U.S.C. § 362(a)(5).[3]

This conclusion is supported by the legislative history of 26 U.S.C. § 4971 and 26 U.S.C. § 412 (ERISA). The House Report for the § 4971 excise tax states: "the bill imposes an excise tax on the employer if he fails to fund the plan at the minimum required amounts (*only if a waiver has not been obtained*)." *See* H.R.Rep. No. 807, 93rd Cong., 2d Sess. 97 (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4670, 4763 (emphasis added).

The legislative history of ERISA shows that waivers may be revoked only in and only as to the year in which a condition of the funding waiver is breached, and not for an earlier year. The House Report on ERISA states:

> It is . . . contemplated that the [IRS] may apply reasonable conditions to a waiver. . . . If a plan were to be amended to increase plan liabilities (or if a condition of waiver otherwise were violated) the amount waived and not yet amortized would immediately become part of the current minimum funding requirement *in the year the condition is breached* (consequently this amount would immedi-

---

**3.** The Court recognizes that a valid claim may exist where the right to payment is "contingent." 11 U.S.C. § 101(4)(A). The IRS might argue that it had a pre-petition "right to payment" of the 1984 excise tax, contingent upon LTV's failure to abide by the conditions of the waiver. A similar analogy would be if the IRS asserted a "right to payment" of a penalty tax for late payment of income tax, contingent upon a person's future failure to pay their income tax on time. In such an instance, as in this case, the contingency is too removed to give rise to a "right to payment." When the party can avert a tax by prompt payment or compliance with their legal obligations, the IRS cannot assert a "right to payment."

ately be charged to the funding standard account).

H.R.Rep. No. 807, 93rd Cong., 2d Sess. 82 (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4670, 4748, *and in* 2 ERISA Legislative History 3115, 3202 (emphasis added). Similarly, the Senate Report on ERISA states:

> If a plan were to violate a condition of waiver, the committee intends that the amount waived and not yet amortized immediately become part of the current minimum funding requirement *in the year the condition is breached* (consequently this amount would immediately be charged to the funding standard account).

S.Rep. No. 383, 93rd Cong., 1st Sess. 62 (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4890, 4947, *and in* 1 ERISA Legislative History 1069, 1130 (1976) (emphasis added).

Thus, the post-petition revocation of the 1984 waiver would neither affect the funding standard account for plan year 1984 nor create an accumulated funding deficiency for that year. The IRS cannot assess excise tax liability for 1984, because no accumulated funding deficiency exists for that year. The excise tax liability that did arise, arose post-petition, and is therefore void under the terms of the automatic stay of the bankruptcy code (11 U.S.C. § 362(a)(5)).[4]

### B. 1985 EXCISE TAX LIABILITY:

█ The validity of the 1985 excise tax liability also hinges on the accrual date of the tax. If the tax accrued pre-petition, it is a valid claim dischargeable in the bankruptcy. If it accrued post-petition, it is invalid and must be expunged under the terms of the automatic stay. 11 U.S.C. § 362(a)(5). The dispositive section of the ERISA statute is 26 U.S.C. § 412(c)(10),

which gives the Debtor eight and one-half months after the close of the plan year to make the required contributions to the pension funds and avoid the excise tax.

In the case of the 1985 excise tax liability, the plan year ended on December 31, 1985. LTV declared bankruptcy on July 17, 1986, but, under the terms of 26 U.S.C. § 412(c)(10)(A), had until September 15, 1986 to make the required payments to the pension funds. On August 27, 1986, LTV applied for a waiver of plan year 1985 contributions with respect to twelve pension plans. By letter dated November 12, 1986, the IRS denied LTV's waiver request for plan year 1985 for all twelve pension plans.

The IRS concedes that at the time of the petition LTV could still make payments for 1985 and avoid any excise tax liability. However, the IRS maintains that the 1985 tax claim accrued pre-petition, because the excise tax liability existed as a "contingent claim" before the filing. According to the IRS, the eight and one-half month extension, provided by 26 U.S.C. § 412(c)(10), was merely a "cure period," and the formal deadline for contributions and the actual accrual date of the excise tax was the last day of the plan year, December 31, 1985.

The IRS cites the language of the ERISA statute to support its contention: "... any contribution for a plan year made by an employer during the period— (i) beginning on the day after the last day of such plan year, and (ii) ending on the day which is 8½ months after the close of the plan year, shall be deemed to have been made on such last day." 26 U.S.C. § 412(c)(10)(A). The IRS maintains that since contributions during the eight and one-half month extension period are deemed made on the last day of the plan year, the accrual date of the 1985

---

**4.** The Court observes that imposing the excise tax for any of the three years would effectively punish LTV for doing what it is required to do under the Bankruptcy Code. After filing for bankruptcy, LTV was neither allowed to pay money to satisfy the conditions of the 1984 waiver, nor pay money to avoid the imposition of excise taxes for 1985 and 1986. Under the automatic stay provision of the Bankruptcy Code (11 U.S.C. § 362), the debtor can only make contributions to debts which occurred pre-petition pursuant to a plan of reorganization. Thus, after the filing, LTV was prohibited from fulfilling the terms of the conditional waiver for the 1984 excise taxes. The waiver was revoked post-petition in response to LTV's "failure" to fulfill its terms. *See In Re Wheeling–Pittsburgh Steel Corp.,* 103 B.R. 672 (W.D.Pa. 1989).

excise tax should also be considered the last day of the plan year, which would make the tax a pre-petition claim.

The Court disagrees with the IRS's contingent claim theory with respect to the 1985 claims. Under the Bankruptcy Code, 11 U.S.C. § 101, in order to have a "claim," the IRS must have a "right to payment." With respect to the 1985 taxes, the IRS never had this "right to payment" before the bankruptcy petition. As of July 17, 1986, the date of LTV's filing, LTV still had two months to pay into the pension plans and avoid altogether the 1985 excise tax. Thus, if LTV had made the required payments to the pension plans between the filing and September 15, 1986, no excise tax liability for 1985 would ever have arisen. The IRS had no cause of action and no legal mechanism to reach LTV's assets on a claim for 1985 excise taxes until after the filing. Thus, the 1985 tax liability arose post-petition and should be disallowed under the automatic stay of 11 U.S.C. § 362.

The legislative history of 26 U.S.C. § 412 supports the view that the eight and one-half additional months does not represent a "cure period," as claimed by the IRS, but instead represents the actual deadline for contributions to avoid 4971 excise taxes. The House Report states:

> [T]he bill provides that an employer's contributions to a plan that are made by the time for filing its tax return can relate back to the year of that return. Consequently, generally an employer will have a period of time after the close of the plan year to contribute to the plan and *avoid the excise tax* on underfunding.

H.R.Rep. No. 807, 93rd Cong., 2nd Sess. 98 (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4670, 4763 (emphasis added). A case cited by the IRS for the proposition that the imposition of the tax is automatic also recognizes that the tax cannot be imposed until the expiration of eight and one-half months from the close of the plan year: "Under section 412(c)(10) of the Code, the taxpayer was required to make the necessary contributions to his plans within eight and one-half months after the close of the plan years ..." *D.J. Lee, M.D., Inc. v. C.I.R.*, 931 F.2d 418, 419 (6th Cir.1991). There existed no excise tax liability on the date of the petition, because LTV still had two months to avoid underfunding the pension plans.

The IRS cites *In re Chateaugay Corporation*, 944 F.2d 997 (2nd Cir.1991), to support its contention that the 1985 excise tax constitutes a pre-petition claim. In that case, the Court found that response costs incurred by the United States Environmental Protection Agency (EPA) under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) were pre-petition claims, regardless of when such costs were incurred, as long as such costs concerned release or threatened release of hazardous waste that occurred before the debtor filed for bankruptcy. Presumably, the IRS would argue that because the 1985 excise tax liability was based on pre-petition labor, the excise tax liability should be considered a pre-petition claim under the logic of *Chateaugay*, 944 F.2d 997.

We believe this case is distinguishable from *Chateaugay*. In that case, the Court was dealing with the "problem of sums ultimately to be owed to EPA." 944 F.2d at 1004. In *Chateaugay*, the EPA would ultimately have a "right to payment" of the response costs. In contrast, in this case, at the time of LTV's filing, the 1985 excise tax did not constitute a sum "ultimately to be owed" to the IRS. If LTV had made the required payments before the expiration of the eight and one-half month deadline, the excise tax never would have been owed to the IRS.

Because the actual deadline for payments to avoid the 1985 excise tax liability was post-petition, the tax liability arose post-petition and should be expunged under the terms of the automatic stay of the Bankruptcy Code. 11 U.S.C. § 362.

### C. 1986 EXCISE TAX LIABILITY:

The government concedes that the 1986 excise tax accrued post-petition (IRS Reply Brief, p. 12). However, the government claims it should be given priority as a post-petition administrative claim, presum-

ably under 11 U.S.C. § 503(b)(1)(A), which affords priority to the "actual, necessary costs and expenses of preserving the estate." While the 1986 excise tax did arise post-petition (as required by § 503), the IRS has not cited a single reason why the excise tax would be a "necessary" cost of preserving the estate. It is not enough that the claim arose post-petition; a claim must actually benefit the estate before it will be awarded administrative priority under § 503.

The IRS again cites *In re Chateaugay,* 944 F.2d 997 (2nd Cir.1991), this time to support its contention that pre-petition occurrences can create a post-petition administrative claim. In that case, the Court found that where there had been a pre-petition release or threatened release of hazardous wastes, clean-up costs assessed post-petition would be entitled to administrative priority. 944 F.2d at 1009. The Court found that such costs were "necessary to preserve the estate in the sense that they enable the estate to maintain itself in compliance with applicable environmental laws." *Id.* The same concerns do not apply here. The IRS 1986 excise tax claim is in no way "necessary to preserve the estate." In fact, if anything, imposition of the 1986 excise tax would make more difficult the successful implementation of a reorganization plan.

Accordingly, because the tax accrued post-petition and it does not qualify as an administrative expense under 11 U.S.C. § 503(b)(1)(A), the Court expunges the 1986 excise tax claim as invalid under the terms of the automatic stay.

### CONCLUSION

In sum, the judgment of the Bankruptcy Court is reversed, and the IRS' tax claims under 26 U.S.C. § 4971 for 1984, 1985, and 1986 are hereby expunged. The Court makes no ruling on the issue of subordinating the excise taxes, since that question is no longer at issue.

SO ORDERED.