In re CHATEAUGAY CORPORATION;
Reomar, Inc.; The LTV Corporation,
Debtors.

The AETNA CASUALTY & SURETY
COMPANY, Appellant,

v.

LTV STEEL COMPANY, INC.; Chateaugay Corporation; Reomar, Inc.; LTV Corporation; LTV Energy Products, Co.; United States of America, Appellees.

No. 955, Docket 95–5062.

United States Court of Appeals,
Second Circuit.

Argued Feb. 14, 1996.

Decided Aug. 30, 1996.

G. Eric Brunstad, Jr., Hebb & Gitlin, Hartford, CT (Peter C.L. Roth, Hebb & Gitlin, on the brief), for Appellant.

M. William Munno, Seward & Kissel, New York City (Michael B. Siller, Robert B. O'Connor, Seward & Kissel, on the brief; Karen E. Wagner, Davis Polk & Wardwell, New York City, of counsel), for Appellees LTV Corporation et al.

Linda A. Riffkin, Asst. U.S. Atty., S.D.N.Y., New York City (Mary Jo White, U.S. Atty., Steven I. Froot, Asst. U.S. Atty., of counsel), for Appellee United States of America.

Before: MAHONEY, WALKER and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

## BACKGROUND

Appellee LTV Steel Company, Inc. ("LTV Steel") and its predecessor in interest have, at various times, owned and operated a number of coal mines. As a coal mine operator, LTV Steel was responsible under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. §§ 901–945, for the payment of black lung disability benefits to mine employ-

ees who contracted black lung disease, as well as to certain survivors of afflicted workers who died from the disease. *See* 30 U.S.C. §§ 921–922.

The Act requires employers covered by its provisions either to self-insure or to obtain outside insurance to cover their black lung obligations. *See* 30 U.S.C. § 933. A mine operator choosing to self-insure must maintain a surety bond in favor of the United States, guaranteeing that if the mine operator for any reason defaults on its payments, the company issuing the bond will pay those benefits up to the value of the bond. The Act further provides that the Department of Labor (DOL) will assume the responsibility for paying black lung benefits when the surety bond is exhausted. This responsibility, however, gives the government the right to get back from the mine operator whatever payments it has made. 26 U.S.C. § 9501(d)(1); 30 U.S.C. § 934(b)(1).

LTV Steel's predecessor in interest chose to self-insure, and in 1983, appellant Aetna Casualty & Surety Co. ("Aetna") issued a $5.5 million bond on its behalf. In 1985, LTV Steel was substituted as principal on the bond.

On January 17, 1986, the LTV Corporation and its affiliates ("the LTV Corporation"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330. As required by the Bankruptcy Code, LTV Steel stopped paying black lung benefits. For several months, the DOL paid the benefits, and soon thereafter Aetna began paying under its bond. When Aetna had paid out the $5.5 million provided by the bond, the DOL resumed making the payments.

Throughout the course of the LTV Corporation's bankruptcy proceedings, Aetna has tried to get back the funds it paid on the bond covering part of LTV Steel's black lung liabilities. The insurance company early recognized that its most likely source of recovery lay in its right to be subrogated to any claim the DOL might have to set off its black lung payments against other moneys, such as tax refunds, that the government owed to LTV Steel. In 1987, Aetna filed a proof of claim on behalf of itself (as a subrogee to the

DOL) and the DOL for all amounts that Aetna and the DOL had been obligated to pay on LTV Steel's account. The DOL also filed a proof of claim with respect to its own black lung payments.

At a certain point in the bankruptcy proceedings, the DOL and LTV Steel entered into a settlement agreement that fixed the government's claims for repayment of the black lung benefits at $23.6 million. Aetna objected to the settlement on the grounds that it risked extinguishing the insurance company's right to be repaid, since that right was derived from Aetna's position as a subrogee to the DOL's right to reimbursement. Both the bankruptcy court and the district court approved the settlement over Aetna's objections. *In re Chateaugay Corp.*, No. 92–9278A (Bankr.S.D.N.Y. Oct. 27, 1992) (unpublished order), *aff'd*, *In re Chateaugay Corp.*, No. 92 Civ. 8894(KC) (S.D.N.Y. June 28, 1993) (unpublished order). We affirmed, but expressly noted that the settlement could have no adverse effect on Aetna's rights or claims. *Chateaugay Corp. v. U.S. Dep't of Labor*, 23 F.3d 396 (2d Cir.1994) (table).

A further plot twist was added by the entry of another government agency—the IRS—onto the scene. Shortly after the LTV Corporation had filed for bankruptcy, the IRS revoked the minimum funding waivers that it had granted to certain LTV Steel-sponsored pension plans. That revocation caused LTV Steel to incur significant liabilities for excise taxes. The IRS filed proofs of claims in the bankruptcy proceedings for these unpaid excise taxes. LTV Steel countered by suing the IRS to expunge or disallow these claims. In the alternative, LTV Steel sought to subordinate the IRS's claims to all general unsecured claims. The bankruptcy court refused to disallow the claims, but did subordinate them. Both the IRS and LTV Steel appealed this decision, and the district court reversed. It expunged the tax claims for 1984, 1985, and 1986—all of which it classified as post-petition claims. *See LTV Corp. v. Internal Revenue Service (In re Chateaugay Corp.)*, 146 B.R. 626, 631–33 (S.D.N.Y.1992).

The IRS moved for reconsideration, and while that motion was pending, the LTV Corporation and the IRS entered into a settlement agreement.[1] This settlement provided in relevant part that the LTV Corporation would pay the IRS approximately $3.6 million in cash. (The sum represented a cash payment of $5.5 million to satisfy the LTV Steel excise tax liability, increased by approximately $3.4 million in other taxes asserted against various LTV subsidiaries in the bankruptcy proceeding, and reduced by a tax refund—on unrelated tax overpayments—of nearly $5.3 million.)[2] The LTV Corporation then applied to the bankruptcy court for an order approving the settlement, such an order being a prerequisite to the court's approval of the LTV Corporation's plan of reorganization.

On May 14, 1993, Aetna received a copy of this "Application for Approval of the Closing Agreement between the LTV Corporation and its Subsidiaries and the Commissioner of Internal Revenue." On reviewing the application, Aetna learned for the first time that the government owed a $5.3 million tax refund to LTV Steel and its affiliates. The insurance company immediately filed an emergency motion, seeking to prohibit the LTV Corporation from using $4.2 million of the refund as part of its settlement with the IRS, or alternatively to condition use of the refund on the provision of adequate protection for Aetna's interest.[3]

The Bankruptcy Code requires the bankruptcy court, when requested by an entity that has an interest in property proposed to be used by the debtor, to prohibit such use, or to condition it on the provision of "adequate protection"—which means essentially to provide payments up to the value of the interest. 11 U.S.C. §§ 361, 363(e). But on reviewing Aetna's motion, the bankruptcy court determined that adequate protection was not required in order for the LTV Corporation to use the $4.2 million as part of its settlement with the IRS; Aetna, the court held, had no interest in the refund.

The court found that the DOL had failed to comply with the federal tax intercept statute, 26 U.S.C. § 6302(d) and 31 U.S.C. § 3720A, and that absent compliance with that statute, the DOL had no right to the refund. Since Aetna's right was subrogated to that of the DOL, Aetna likewise could claim no interest in the money.

Having reached this conclusion, the bankruptcy court approved the settlement between the LTV Corporation and the IRS, and, at the same time, confirmed LTV's Second Modified Joint Plan of Reorganization. Aetna moved in the bankruptcy court for a stay pending appeal, which was denied. We denied a similar motion. *In re Chateaugay Corp.*, No. 93–5048(L) (2d Cir. June 22, 1993).

Aetna then appealed the bankruptcy court's decision to the district court. The district court first addressed LTV Steel's argument that Aetna's appeal should be dismissed as moot because the plan of reorganization had been substantially consummated. The district court found that the doctrine of equitable mootness in bankruptcy proceedings—which "centers on the important public policy favoring orderly reorganization and settlement of debtor estates by affording finality to the judgments of the bankruptcy court," *Rochman v. Northeast Utilities Service Group (In re Public Service Co. of New Hampshire)*, 963 F.2d 469, 471–72 (1st Cir.) (internal quotation marks omitted), *cert. denied*, 506 U.S. 908, 113 S.Ct. 304, 121 L.Ed.2d 226 (1992)—should not apply to the circumstances of this dispute.

1. The settlement between the IRS and the LTV Corporation was independent of the earlier-mentioned settlement between the DOL and LTV Steel.

2. The settlement also provided that the parties would ask the district court to vacate as moot its judgment ordering the IRS's pension excise taxes expunged. This request was made and granted. *LTV Corp. v. Internal Revenue Service (In re Chateaugay Corp.)*, 157 B.R. 74 (S.D.N.Y.1993).

3. Of the $5.3 million total refund, Aetna claims an interest in only the $4.2 million that was owed to LTV Steel. The remainder of the refund was owed to affiliates of LTV Steel, and Aetna does not argue that the DOL, or Aetna as the DOL's subrogee, has any claim to that portion of the refund.

Reviewing courts presume that it will be inequitable or impractical to grant relief after substantial consummation of a plan of reorganization. But, as the district court recognized, this presumption will give way if 1) the court can still provide effective relief; 2) granting relief will not affect the "reemergence of the debtor as a revitalized corporate entity"; 3) granting relief will not unravel the transactions that formed the basis of the plan of reorganization; 4) the parties that might be adversely affected by a grant of relief have received notice and an opportunity to be heard; and 5) the entity seeking relief has diligently pursued a stay of execution of the plan throughout the proceedings, *see Frito–Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.),* 10 F.3d 944, 952–53 (2d Cir.1993). Reviewing each of these factors, the district court concluded that Aetna's appeal was not moot under the equitable doctrine. In reaching this conclusion, it emphasized that Aetna was not attacking the settlement between the Internal Revenue Service and LTV but was simply asking for adequate protection for the use of its interest in the settlement.

As to the merits of Aetna's claims, however, the district court agreed with the bankruptcy court that the DOL had no interest in the tax refund to which Aetna could be subrogated. Like the bankruptcy court, the district court found that the DOL could only have a right to the tax refund if it complied with the tax intercept statute, 26 U.S.C. § 6302(d) and 31 U.S.C. § 3720A. This statute, the court found, was the exclusive manner in which federal agencies could obtain the right to set off non-tax debts against tax refunds. The district court rejected Aetna's argument that a common law right of setoff existed apart from, and undisturbed by, the tax intercept statute, and that by this common law right the DOL could offset the black lung liabilities against a tax refund. Since it was undisputed that DOL had not complied with the tax intercept statute, the district court affirmed the bankruptcy court ruling.

Aetna appealed from this decision. We find that the district court erred in its conclusion that the DOL possessed no common law right of setoff that would provide the govern-

ment—and Aetna as its subrogee—with an interest in the tax refund. Accordingly we reverse the judgment of the district court as to the existence of Aetna's interest in the tax refund and remand the case to that court with instructions to remand to the bankruptcy court for a valuation of that interest.

## DISCUSSION

### A. Mootness

LTV Steel here renews its claim that Aetna's appeal should be dismissed under the doctrine of equitable mootness. As we noted before, the district court—applying the factors we enumerated in *Frito–Lay, Inc. v. LTV Steel Co., Inc. (In re Chateaugay Corp.),* 10 F.3d 944, 949–53 (2d Cir.1993)—concluded that the action was not moot. We agree with the court's thorough analysis of this matter, and affirm on this point for the reasons stated in the district court's opinion. *In re Chateaugay Corp.,* 93 Civ. 4725, 1995 WL 386483, 1995 U.S. Dist. LEXIS 8982 (S.D.N.Y. June 28, 1995).

### B. DOL's Waiver of its Setoff Right

■ LTV Steel next argues that even if we were to conclude that the DOL had a setoff right to which Aetna could be subrogated, the DOL waived that right by failing to assert it in its proof of claim. We agree that since Aetna's interest in the tax refund is derived from its position as subrogee to the DOL, if the DOL waived its right of setoff then Aetna would have no interest in the refund. We are, however, convinced that the DOL proof of claim was sufficient to preserve its right.

The DOL's proof of claim stated: "This claim is not subject to any setoff or counterclaim currently known by this Federal agency. This claim is subject to the United States's right to withhold subject to offset amounts due from another Federal entity...." LTV Steel argues that the second sentence of this statement is not sufficiently specific to preserve the right to setoff the black lung liability against the tax refund, and that if such a right is not asserted in a proof of claim, it must be treated as waived.

Some courts have indeed held that failure to assert a setoff right specifically in a proof of claim is a waiver of that right. *See, e.g., Tavormina v. ITT Commercial Fin. Corp. (In re Aquasport, Inc.),* 115 B.R. 720, 721–22 (Bankr.S.D.Fla.1990), *aff'd on other grounds,* 155 B.R. 245 (S.D.Fla.1992) (finding no waiver), *aff'd, ITT Commercial Finance v. Tavormina,* 985 F.2d 579 (11th Cir.1993) (table). Other courts, however, have found that a setoff right can be preserved even though it was not asserted in a proof of claim. *See, e.g., Davidovich v. Welton (In re Davidovich),* 901 F.2d 1533, 1539 (10th Cir.1990). *See generally Weems v. United States (In re the Custom Center, Inc.),* 163 B.R. 309, 316–17 (Bankr.E.D.Tenn.1994) (reviewing the various approaches courts have taken to this problem).

We do not need to decide which of these positions is correct because we conclude that the DOL's statement that its claim was "subject to offset amounts due from another Federal agency" was sufficiently specific to preserve that right, even under the most stringent standard.[4] The primary purpose of 11 U.S.C. § 501 "is to ensure that all those involved in the proceeding will be made aware of the claims against the debtor's estate and will have an opportunity to contest those claims." *Liona Corp. v. PCH Assocs. (In re PCH Assocs.),* 949 F.2d 585, 605 (2d Cir.1991). The DOL proof of claim is, on its face, sufficiently specific to provide this notice, and LTV Steel has put forward

no evidence that it was in fact surprised by Aetna's assertion of the DOL's setoff right. Accordingly, we hold that the DOL's proof of claim was not a waiver of any right of setoff that it might have had against the tax refund owed to LTV Steel.

## C. The Setoff Right

The district court found that Aetna had no interest in LTV Steel's tax refund because the DOL had not complied with the tax intercept statute in asserting its right to set off LTV Steel's black lung liabilities against the tax refund. Aetna counters that—quite apart from the tax intercept statute—the DOL could avail itself of the government's longstanding common law right to set off debts owed to a citizen against that citizen's liabilities to the government. It further argues that this right was preserved in bankruptcy by 11 U.S.C. § 553.[5] The district court refused to recognize any common law right and concluded instead that the government's exclusive claim to setoff was derived from the relatively recently enacted statutory tax intercept program. Accordingly, the DOL's failure to participate in that program meant that it could not set off its black lung payments against any tax refund owed to LTV Steel.[6]

The tax intercept program was enacted as part of the Deficit Reduction Act of 1984 and includes two separately codified provisions, 26 U.S.C. § 6402(d)[7] and 31

4. Because we conclude that the DOL proof of claim was sufficiently specific, we also do not address whether the proof of claim filed by Aetna on the government's behalf—a proof of claim that unambiguously stated that the claim was subject to offset against any tax refund—was "rendered a nullity" by the DOL's filing of its own proof of claim, as LTV argues.

5. Section 553(a) of the Bankruptcy Code provides:

Except as otherwise provided ... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

11 U.S.C. § 553(a). This section does not itself provide a right of setoff; it merely preserves setoff rights that exist outside the bankruptcy

context. *Citizens Bank of Maryland v. Strumpf,* —— U.S. ——, ——, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995).

6. In its brief before this Court, the government took the position that the district court was incorrect in its holding that the tax intercept statute is the exclusive method for government agencies to offset debts owed them against tax refunds. It did, however, support the district court's decision on other grounds, discussed in Section D of this opinion.

7. 26 U.S.C. § 6402(d)(1) provides:

Upon receiving notice from any Federal agency that a named person owes a past-due legally enforceable debt ... to such agency, the Secretary [of the Treasury] shall—(A) reduce the amount of any overpayment payable to such person by the amount of such debt; (B) pay the amount by which such overpayment is

U.S.C. § 3720A,[8] which are often referred to as a single statute. Section 6402(d) authorizes the Secretary of the Treasury to set off a tax refund against the taxpayer's debt to another Federal agency. Section 3720A provides the procedural framework for that setoff. In order to take part in the tax intercept program, an agency must comply with the terms of the statutory provisions as well as with regulations promulgated by the Secretary of the Treasury. One such regulation, 26 C.F.R. § 301.6402–6(a), requires all agencies that wish to take part in the program to register with the IRS.[9]

It is undisputed that the DOL did not register with the IRS as a participant in the tax intercept program. In fact, even if the DOL had opted into the program, the statute would not have applied to the particular refund at issue here. 31 U.S.C. § 3720A(g) provides that "[i]n the case of refunds of business associations, this section shall apply only to refunds payable on or after January 31, 1995." The tax refund due to LTV Steel was due well before January 31, 1995. Thus, even if the DOL had complied with the Treasury regulations under the tax intercept program, LTV Steel's refund would have been exempt from setoff under that scheme.

The question we must address then, is not whether the statute provides Aetna with an interest in the tax refund—it does not—but whether there is any method, other than compliance with the statute, through which a government agency can set off, against a tax refund, moneys that are owed to it.

The district court, in concluding that no other·method for setoff was available to the government, relied substantially on one part of the legislative history of the tax intercept program. The conference committee report on the statute states unequivocally that "[p]resent law does not provide authority for the IRS to offset tax refunds against nontax debts owed to Federal agencies." *Joint Explanatory Statement of the Committee of Conference,* H.R.Conf.Rep. No. 861, 98th Cong., 2d Sess. 757, 1413 (1984), *reprinted in* 1984 U.S.C.C.A.N. 697, 1445, 2101; *see also Donahue v. United States,* 33 Fed. Cl. 600, 606 n. 2 (1995) (quoting this portion of the legislative history and accepting the premise that agencies other than the IRS were not previously allowed setoff against tax refunds).

■ But this statement is flatly contradicted by numerous early cases in which the government did set off tax refunds against nontax liabilities. *See, e.g., Cherry Cotton Mills v. United States,* 327 U.S. 536, 537, 66 S.Ct. 729, 90 L.Ed. 835 (1946) (involving a debt owed to the Reconstruction Finance Corporation, a federal agency, that was set off as an allowable counterclaim against one of its debtors in a suit by that debtor for a tax refund); *Luther v. United States,* 225 F.2d 495 (10th Cir.1954) (holding that Secretary of Treasury may set off tax overpayments against debts owed to the Commodity Credit Corporation); *Malman v. United States,* 202 F.2d 483, 485 (2d Cir.1953) (setting off amount due from U.S. Army against taxpayer's overdue tax liability); *United States v. La Grange Grocery Co.,* 31 F.2d 297, 298–99 (N.D.Ga.1929) (discussing statutory setoff procedures since 1875, and noting that "a *right* of offset" no doubt existed even earlier). And there is no better proof of the existence of a common law right than its exercise, and acceptance by the courts. Furthermore, in a report presented to Congress five years before the creation of the tax

---

reduced ... to such agency; and (C) notify the person making such overpayment that such overpayment has been reduced by an amount necessary to satisfy such debt.

**8.** 31 U.S.C. § 3720A(a) requires Federal agencies to notify the Secretary of the Treasury of any past due debt at least once each year. 31 U.S.C. § 3720A(b) mandates that an agency planning to take advantage of the statutory setoff procedure:

(1) notifies the person incurring such debt that such agency proposes to take action ...; (2) gives such person at least 60 days to present evidence that all or part of such debt is not past-due or not legally enforceable; (3) considers any evidence presented by such person and determines that an amount of such debt is past due and legally enforceable; (4) satisfies such other conditions as the Secretary may prescribe ...; (5) certifies that reasonable efforts have been made by the agency (pursuant to regulations) to obtain payment of such debt.

**9.** A slightly different temporary version of the regulation, Temp.Treas.Reg. § 301.6402–6T, applies to all refunds payable between December 31, 1985, and April 14, 1992.

intercept program, the Comptroller General stated unambiguously that the IRS possessed a right to set off refunds against debts owed to other agencies. *See* United States General Accounting Office, *Report to the Congress of the United States by the Comptroller General: The Government Can Collect Many Delinquent Debts by Keeping Federal Tax Refunds as Offsets* 4, 8 (1979). Given all of this evidence, we conclude that a common law right did exist prior to the enactment of the tax intercept statute, and that this right allowed government agencies a setoff against tax refunds.

We must consider, however, whether Congress intended the tax intercept statute to preempt all preexisting common law rights of setoff. Certainly, as the district court noted, if the statute is not intended to be the exclusive means of setoff, agencies might persistently ignore its onerous compliance obligations and simply assert the common law right instead. As to tax refunds that are covered by the statute, therefore, it seems quite plausible that compliance with the statutory scheme was meant by Congress to be a necessary prerequisite to setoff. But that is not the situation with which we are confronted here, and so we do not decide that question.

■ The LTV Steel refund is expressly exempted from the statute's application by the effective date provision of 31 U.S.C. § 3720A(g). And there is nothing, either in the language of the statute or in its legislative history, that would lead us to believe that Congress meant the statute to abrogate common law rights of setoff against refunds for which the intercept law provides no statutory alternative. It is a longstanding principle that "[s]tatutes which invade the common law . . . are to be read with a presumption

favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident," *Isbrandtsen Co. v. Johnson,* 343 U.S. 779, 783, 72 S.Ct. 1011, 1014, 96 L.Ed. 1294 (1952); *see also United States v. Texas,* 507 U.S. 529, 537–38, 113 S.Ct. 1631, 1636, 123 L.Ed.2d 245 (1993) (From the fact that the Debt Collection Act of 1982 "tightened the screws" in some areas of debt collection, "it does not at all follow" that Congress "intended that the screws be entirely removed" in areas not addressed by the statute. "The more logical conclusion is that it left the screws in place, untightened.").

■ Accordingly, we conclude that the DOL possesses a common law right to setoff its nontax debts against tax refunds. And we further hold that the tax intercept statute does not preempt the application of that common law right in situations as to which the statute by its own terms does not apply.[10] Since, under 11 U.S.C. § 509(a), Aetna is subrogated to any rights the DOL might have to recover funds from LTV Steel, we find that Aetna has an interest in the tax refund.

■ LTV Steel nevertheless argues that, even assuming that the DOL has a right of setoff, Aetna cannot benefit from that right. LTV Steel contends that Aetna cannot, as a subrogee to the DOL's right under 11 U.S.C. § 509(c), assert the DOL's rights to any payment from LTV Steel until the claim has been paid in full to the DOL. And, since the DOL has settled with LTV Steel, no such full payment will ever be made.

■ Section 509(c) does subordinate a subrogee's claims until payment in full has been made to the principal creditor. But we cannot accept LTV Steel's argument that the

---

10. Aetna also argued that the DOL possessed a right of setoff granted by certain other statutory provisions. None of the provisions cited by Aetna is applicable here. 11 U.S.C. § 106(c) empowers a debtor to assert a setoff right against a governmental agency when that agency has filed proofs of claim in a bankruptcy proceeding. *See Merritt Commercial Sav. & Loan, Inc. v. Guinee,* 766 F.2d 850 (4th Cir.1985). Its purpose—to recognize a partial waiver of sovereign immunity—is not in any way implicated in this case. 31 U.S.C. § 3728 is equally inapposite, as it express-

ly applies only to offsets against any "judgment" owed by the United States. A tax refund is not a judgment. 31 U.S.C. § 3702, which grants the Comptroller General authority to "settle all claims of or against the United States Government," is at best ambiguous as to its relevance to the dispute before us. Because we find that a common law right of setoff exists and applies in this case, we do not need to consider whether § 3702 might in some circumstances be the basis of a statutory setoff right.

settlement between LTV Steel and DOL can thus frustrate Aetna's efforts to recover. Admittedly, the DOL will never be paid in full because the settlement the agency reached with LTV Steel extinguished its claims in return for a payment significantly less than the full amount owed. That settlement, however, was affirmed by the district court and by this Court with specific reference to the fact that the settlement would not be permitted to extinguish Aetna's rights. Under the circumstances, we understand the acceptance of the settlement to constitute the requisite "full payment" of the DOL claims within the meaning of § 509(c).[11]

### D. The Government's Argument on Appeal

■ In its brief to this Court, the government—essentially agreeing with our finding that a common law right of setoff exists—"concluded that the basis upon which the district court reached its decision in this case ... was incorrect." Nonetheless, the government urges us to affirm the decision of the district court on an alternative basis. See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 343 (2d Cir.1994) (holding that an appellate court can affirm a district court's order "on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely") (internal quotation marks and citation omitted).

The government argues that Aetna could not have had a property interest in the $4.2 million tax "refund" because LTV Steel never had such an interest. A taxpayer, the government contends, has no interest in an overpayment to the IRS until the IRS has credited the overpayment against the taxpayer's liabilities and has determined that a refund is due. In support of this argument, the government points to 26 U.S.C. § 6402(a), which provides that "[i]n the case of any overpayment, the Secretary [of the Treasury], within the applicable period of limitations, may credit the amount of such

overpayment ... against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall ... refund any balance to such person."

Rather than being a setoff provision, this statute, according to the government, "governs the manner in which the IRS calculates whether taxpayers are due any refund of federal taxes." Only after that internal IRS accounting has occurred does the excess of "overpayment" above "underpayment" become a "refund" in which the taxpayer has a property interest. In this case, the government argues, LTV Steel's tax liabilities were significantly higher than the company's tax overpayments. Accordingly, LTV Steel never had a property interest in those overpayments. It follows that neither the DOL nor Aetna could have offset the black lung liabilities against the $4.2 million.

■ The government's argument ignores the fact that all instances of offsetting involve exactly the process that the IRS here describes as merely an "accounting" procedure. As the Supreme Court has noted, the principle of allowing setoff is intended to avoid "the absurdity of making A pay B when B owes A." Studley v. Boylston Nat'l Bank, 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913); see also Strumpf, —— U.S. at ——, 116 S.Ct. at 289. The right of setoff is a "common right, which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him." Gratiot v. United States, 40 U.S. (15 Pet.) 336, 370, 10 L.Ed. 759 (1841).

■ By arguing that the "accounting" procedure under 6402(a) is something other than an ordinary right of setoff, the government in essence asks us to find that the bankruptcy laws do not apply to the IRS. This we cannot do. For the Supreme Court has quite clearly held that "[n]othing in the Bankruptcy Code or its legislative history indicates that Congress intended a special exception for the tax collector." United

---

11. Since we conclude that Aetna has an interest in the tax refund as a subrogee of the DOL's right of offset, we do not address Aetna's alternative

argument that the insurance company is, itself, directly subrogated to LTV's right to receive the tax refund.

*States v. Whiting Pools, Inc.*, 462 U.S. 198, 209, 103 S.Ct. 2309, 2316, 76 L.Ed.2d 515 (1983); *see also United States ex rel. IRS v. Norton*, 717 F.2d 767, 772 (3d Cir.1983).

It is true that some courts have accepted the argument that crediting tax overpayments against tax liabilities is not a "setoff" within the meaning of § 553 of the Bankruptcy Code. *See, e.g., Security Pac. Nat'l Bank v. United States (In re Siebert Trailers, Inc.)*, 132 B.R. 37, 41 (Bankr.E.D.Cal.1991) ("I.R.C. § 6402 is not a mere codification of the common law rule of off-set; but, rather it is a definitional section, which section defines the term refund."); *see also Pettibone Corp. v. United States (In re Pettibone Corp.)*, 161 B.R. 960, 963 (N.D.Ill.1993), *aff'd in part*, 34 F.3d 536 (7th Cir.1994) (interpreting the word "setoff" in a plan of reorganization rather than in the context of § 553, but employing analysis that would apply equally to the statutory provision). But at least as many other courts have treated the IRS process for crediting overpayments against underpayments as a setoff under § 553. *See, e.g., In re Womack*, 188 B.R. 259, 260–61 (Bankr.E.D.Ark.1995); *In re Firestone*, 179 B.R. 148, 148–49 (Bankr.D.Neb.1995); *In re Whitaker*, 173 B.R. 359, 360–61 (Bankr. S.D.Ohio 1994); *In re Thorvund–Statland*, 158 B.R. 837, 838–39 (Bankr.D.Idaho 1993); *United States ex rel. IRS v. Johnson (In re Johnson)*, 136 B.R. 306, 308 (Bankr.M.D.Ga. 1991); *Rozel Indus. v. IRS (In re Rozel Indus.)*, 120 B.R. 944, 948–49 (Bankr.N.D.Ill. 1990); *Norton*, 717 F.2d at 772; *see also* 4 Lawrence P. King et al., Collier on Bankruptcy, ¶ 553.08[1], at 553–49 (15th ed. 1995).

▮ We are convinced that, just as 26 U.S.C. § 6402(d), the tax intercept statute, gives federal agencies other than the IRS a right of setoff against tax overpayments, so § 6402(a) grants that right to the IRS itself. When the LTV Corporation filed for bankruptcy, all of its creditors were prohibited (by operation of bankruptcy's automatic stay provision, 11 U.S.C. § 362(a)(7)) from offsetting any debt owed to them without permission of the bankruptcy court, in accordance with the Code. *See* 4 Collier on Bankruptcy, *supra*, ¶ 553.05[2], at 553–35. In this re-spect, the IRS is treated like any other creditor.

A conclusion that the IRS cannot conduct its setoff procedures without the permission of the bankruptcy court, however, does not determine whether Aetna's claim to LTV Steel's $4.2 million tax overpayment has precedence over the IRS's claim. In fact, Treasury regulations suggest that, as a general matter, the DOL (and, hence, Aetna) has a lower-priority claim to any tax overpayment than the IRS has. 26 C.F.R. § 301.6402–6(g)(1) provides that before another government agency has a right to a setoff against a tax overpayment, that overpayment "shall be reduced first by the amount of an outstanding liability for any tax under section 6402(a)...."

▮ This provision, giving priority to IRS setoffs over other government setoffs, cannot, however, thwart the requirements of 11 U.S.C. § 553, that to be preserved in bankruptcy a setoff must involve pre-petition mutual debts. The regulation suggests, and powerfully, that if LTV Steel's excise tax liabilities were pre-petition claims, the IRS's claim would take precedence over the claims of the DOL, and hence over Aetna's claims. But it cannot serve to defeat Aetna's pre-petition claims if LTV Steel's tax liabilities arose post-petition.

Before the IRS and the LTV Corporation agreed to settle, the district court, in a thorough and well-reasoned opinion, concluded that the IRS's excise tax claims were post-petition claims. *In re Chateaugay*, 146 B.R. 626 (S.D.N.Y.1992). When the parties reached their settlement agreement, they requested that the court vacate its opinion as moot, and the court agreed to do so. *In re Chateaugay*, 157 B.R. 74 (S.D.N.Y.1993). The government argues that because this opinion has no binding effect, we are free to conclude that LTV Steel's tax liability in fact arose pre-petition, and that the IRS, under § 553, is therefore entitled to offset that liability against the refund before the DOL— and Aetna—can claim a setoff.

Even though we are not bound by Judge Conboy's opinion, we nevertheless agree with its reasoning, and we adopt its conclusions as our own. Since LTV Steel's excise tax liabil-

ity arose post-petition, the IRS's right of setoff as to that liability cannot take precedence over the pre-petition claim of the DOL to which Aetna is subrogated.

Finally, the government argues that because the LTV Corporation filed a common tax return for itself and its subsidiaries (including LTV Steel), the tax liabilities of its other subsidiaries can be treated as LTV Steel's liabilities for the purposes of § 553. Moreover, the government points out that these other tax liabilities involved in the settlement (amounting to over $4.2 million) were clearly pre-petition. Setoff of these other taxes would, according to the government, take priority over any claim by the DOL, and would exhaust the refund, leaving nothing for the interagency setoff.

We reject the government's argument. These other taxes were not owed by LTV Steel, but by different subsidiaries of the LTV Corporation. In 1991, we made clear that when a parent corporation files a return for its subsidiaries, "[t]he common parent acts as an agent on behalf of all the members of the consolidated group for the convenience and protection of [the] IRS only. The corporations retain their separate identities and the property interests of the subsidiaries are not absorbed by the common parent." *Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines Inc.)*, 928 F.2d 565, 571 (2d Cir.) (citations and internal quotation marks omitted), *cert. denied*, 502 U.S. 821, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991). We are bound by that holding today. It follows that even pre-petition tax liabilities of other subsidiaries in the LTV Corporation group cannot take priority over Aetna's interest in LTV Steel's tax refund. *See Western Dealer Management, Inc. v. England (In re Bob Richards Chrysler–Plymouth Corp.)*, 473 F.2d 262, 265 (9th Cir.), *cert. denied*, 412 U.S. 919, 93 S.Ct. 2735, 37 L.Ed.2d 145 (1973).

## CONCLUSION

We hold that the DOL possesses a common law right to offset LTV Steel's black lung liabilities against the company's tax refund and that Aetna is subrogated to the DOL's right of setoff. That right is prior to any right the IRS has to offset post-petition tax liabilities against pre-petition tax overpayments. The validity of the settlement between the Internal Revenue Service and LTV is not before us. But we hold that Aetna has a right to adequate protection for the use of its interest in the settlement. In doing so, we emphasize that Aetna's right to adequate protection is against LTV and it is from LTV rather than the IRS that the moneys to ensure that adequate protection must come. There remains some dispute between LTV Steel and Aetna as to the precise sum owing on Aetna's $5.5 million bond, given payments that have already been made as part of the bankruptcy proceedings. We therefore reverse the judgment of the district court and remand the dispute to that court with instructions to remand to the bankruptcy court for a determination of the value of Aetna's interest in the tax refund and for provision of adequate protection for that interest.