In re ROYAL CROWN BOTTLING COMPANY OF BOAZ, INC., Debtor.

The NATIONAL BANK OF BOAZ, Plaintiff,

v.

ROYAL CROWN BOTTLING COMPANY OF BOAZ, INC., and Milton G. Garrett, Trustee, Defendants.

Bankruptcy No. 80–02433.
AP No. 81–0301.

United States Bankruptcy Court, N.D. Alabama.

June 5, 1981.

Robert W. Hanson, Albertville, Ala., for plaintiff.

James S. Oster, Birmingham, Ala., for debtor.

Milton G. Garrett, Birmingham, Ala., trustee.

## OPINION AND ORDER

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

The above-styled adversary proceeding was briefly tried before the undersigned bankruptcy judge, without the intervention of a jury, on June 4, 1981, and at the conclusion of the trial it was announced by the bankruptcy judge that the verdict was in favor of the defendants. The above-styled case was filed and is pending before this Court under Chapter 7, Title 11, United States Code. There was no substantial dispute as to the events upon which this litigation was predicated.

## FINDINGS OF FACT

From the uncontraverted pleadings, the stipulations or admissions of the parties, and the testimony presented at the trial, the bankruptcy judge finds the following facts:

1. On December 4, 1979, an indebtedness to the plaintiff-bank, which it carried in the name of "K–A, Inc. d/b/a ROYAL CROWN BOTTLING CO.", was renewed by the execution of a promissory note in that name, in favor of the plaintiff, and in the sum of $184,000;

2. Said note stated that it was due and payable on or before June 3, 1980, and contained a provision that the plaintiff was "authorized to apply on or after maturity, to the payment of this debt any funds in said bank belonging to the maker, surety, endorser, guarantor, or any of them";

3. The promissory note bore the guarantees of William D. Hildebrand and F.M. Falkner but none other;

4. The debtor filed a voluntary petition in bankruptcy, initiating this case, on May 7, 1980, and, on May 16, 1980, the defendant-trustee went to the plaintiff's banking house and demanded that the plaintiff pay to him, as trustee in the debtor's case, the sum of $8,580.39, and debit the same to the bank account which the debtor maintained with the plaintiff, and the plaintiff paid said sum of money to the trustee;

5. Nehi Bottling Company of Boaz had been a partnership which operated a soft-drink bottling and distributing business in the area of Boaz, Alabama, and its business had been transferred to K–A, Inc., a corporation which the partners formed at Columbus, Georgia, under the laws of that state;

6. The shares of stock of K–A, Inc., were later acquired by the debtor, which was a corporation formed at Boaz, Alabama, under the laws of this state, for the purpose of taking over said business and a related business at Gadsden, Alabama; and

7. An agreement between the shareholders of K–A, Inc., and the debtor, adopted by the board of directors of the debtor on October 31, 1978, included the following provisions:

> Be it therefore resolved, that the corporation shall assume, be responsible for, and pay, as such obligation may come due, in accordance with the original terms of the agreement, all debts, accounts payable, notes, contracts, leases, security agreements or like obligations created by KA, Inc. . . . . ; and, . . . .

It is neither alleged nor stipulated that the promissory note or the debt which it evidenced remained unpaid in whole or in part; however, it might be argued that an inference can be made from paragraph "9." of the plaintiff's complaint to the effect that there still remains unpaid on said debt or note a sum at least equal to the amount "withdrawn" by the trustee from the debtor's bank account.

### CONCLUSIONS BY THE COURT

The following would be essential to a recovery by the plaintiff from the trustee of the money which it paid to him:

1. The Court would have to infer that, at the time of the bank's payment to the trustee, there remained unpaid on the promissory note or the debt which it evidenced a sum equal to or in excess of the funds paid by the bank to the trustee;

2. The agreement between the shareholders of K–A, Inc., and the debtor, adopted by the board of directors of the debtor on October 31, 1978, would have to create a liability on the part of the debtor to pay such indebtedness; and

3. The bank would have had to have the right, at the time of its payment to the trustee, to offset its obligation under the bank account against the debtor's obligation.

As stated, it is arguable that a reasonable inference can be made from the plaintiff's complaint that the debt in question, or a sufficient portion of it, remained unpaid on May 16, 1980, and the same inference possibly can be drawn from the manner in which the parties tried this adversary proceeding.

There is some ambiguity as to whether the debtor had an obligation to pay the debt in question, on May 16, 1980. The agreement between the stockholders of K–A, Inc., and the debtor leaves some doubt as to whether the debtor's liability extended only to then-liabilities of K–A, Inc., or would include liabilities created in the future, and it is not clear from the evidence whether this promissory note was a novation or entirely a renewal of an indebtedness which existed at the date of the agreement between K–A, Inc., and the debtor. Even if the first two factors are resolved in favor of the plaintiff, there remains the question of whether the bank had a right of setoff, with respect to this debt, on May 16, 1980. The promissory note which embodied the contractual terms of the debt owed to the bank "authorized [the bank] to apply on or after maturity, to the payment of this debt any funds in said bank belonging to the . . . guarantor . . . ." Since the promissory note was not due until June 3, 1980 [there was no evidence that the bank had made a prior call for payment upon K–A, Inc.], the literal terms of this provision did not create a right of offset in the bank, as of May 16, 1980.

Counsel for the plaintiff argued that two decisions of the Alabama Supreme Court, taken together, established that the insolvency of a bank or the insolvency of its debtor accelerated such a right of setoff and that the insolvency of the debtor in the case before the Court gave the bank the

right of setoff when the trustee appeared at its banking house on May 16, 1980; however, no case was cited to support a principal of law that insolvency of the guarantor accelerated the bank's right of setoff against the bank account of the guarantor, and there was no evidence as to the insolvency of K–A, Inc.

Counsel for the plaintiff also contended that the bank had a general "banker's lien" or a common law right of setoff on May 16, 1980; however, such a lien or right would raise the same questions as to whether the right existed on May 16, 1980, even if it existed later, at the due date of the promissory note. Also, if the bank's right was embodied in some sort of "lien" it appears that the bank released the lien on the sum of $8,580.39, when it paid that sum to the trustee.

Regardless of any of the foregoing matters, the bankruptcy judge concludes that any right of setoff which the bank might have had as to said sum of $8,580.39, on May 16, 1980, was a right which could be exercised only before it paid said sum to the trustee, which is another way of saying that this payment by it extinguished any such right which it might have had.

Some confusion might arise in this case by the reference to a "banker's lien" and by the argument of plaintiff's counsel that a waiver of the bank's alleged right of setoff would require its deliberate relinquishment of a known right and that the bank's officers were not lawyers and did not know that the bank had the right to resist the trustee's demand for payment. Such terms as "money in the bank", "withdraw or take out the money in my account", and "apply . . . any funds in said bank belonging to the . . . guarantor" tend to confuse the debtor relationship between the bank and its depositor, as to the credit of $8,580.39 which apparently was shown by the bank in favor of this bank account, on May 16, 1980. At that point, there were no funds, in tangible money, segregated and held by the bank for the use of this account-customer. At that point the bank was the debtor of the debtor in this case, and if it had any right of setoff that right was to setoff a debt of $8,580.39 against a like portion of a debt owed by this debtor to it. Once the bank paid to the trustee the sum of $8,580.39, this debt was no longer owed by the bank to the debtor in this case, and there was no longer a debt for that sum which it could offset against a debt which the debtor in this case might then have owed to it. Thus, the plaintiff's alleged right to recover said sum from the trustee, upon a right of setoff, collapses, because there was no such right after the bank paid that sum to the trustee. It is not necessary, therefore, to inquire into some of the esoteric questions which have been raised in other cases concerning whether a party has in fact waived some right which it failed to exercise at what seemed to be the appropriate time to exercise the right. There is, of course, nothing in this case to support the hint or implication by plaintiff's counsel that the bank acted under duress applied by the trustee in bankruptcy.

### ORDER OF THE COURT

In view of the foregoing, it is ORDERED by the Court that the relief sought by the plaintiff under its complaint is denied and that the complaint and this adversary proceeding are dismissed out of court.