**In re TILSTON ROBERTS CORPORATION, Debtor.**

**Bruce D. SCHERLING, as Trustee of Tilston-Roberts Corporation, Appellant,**

v.

**CHASE MANHATTAN BANK, N.A., Respondent.**

**No. 86 Civ. 3385 (CSH).**

United States District Court, S.D. New York.

May 28, 1987.

---

Bruce D. Scherling, New York City, for appellant.

Harvis & Zeichner, by A. Zeichner, New York City, for respondent.

### MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Appellant trustee in bankruptcy appeals from an order of the Bankruptcy Court, No. 84 B 11693 (PBA), *Abram,* Judge, denying the trustee's motion to require respondent bank to discharge a deposit and granting the bank's cross-motion to enforce a setoff. The order below is affirmed.

### I.

The facts in this case are undisputed. Tilston-Roberts Corporation ("Debtor")

filed a Chapter 7 petition on or about December 10, 1984. An interim trustee was appointed on December 10, 1984. In the afternoon of that day the Trustee delivered a letter to Daniel J. McOlvin, a second vice president of the Chase Manhattan Bank ("Chase"), confirming a prior telephone conversation in which the Trustee had advised him of the Chapter 7 filing and the concomitant freeze on the Debtor's bank accounts. On December 11, 1984 Mr. McOlvin informed the Trustee that the Debtor's account at Chase had a balance of $252,887.06. On December 12, 1984, the Trustee opened an account at Chase and debit and credit advices evidencing the transfer of $252,887.06 from the Debtor's account to the Trustee's new account were issued.

Also on December 12, 1984, the Trustee wrote a check on the new Chase account for $230,000 and deposited it in his account at another bank.

Approximately one hour after issuing the credit and debit advices on December 12, 1984, Mr. McOlvin learned that the Debtor had another account with Chase, at the branch office in Syracuse, New York. There was an overdraft in the Syracuse account in the amount of $133,126.28. Chase attempted to notify the Trustee of this situation and to advise him that the transfer of funds of which he had been advised earlier that day had been erroneous. Chase confirmed this by hand delivered letter to the Trustee on December 14, 1984. Chase also put a hold on the Trustee's new account to the extent of the Syracuse account's overdraft.

The Trustee's $230,000 check to his other bank failed to clear as a result of the hold placed on his Chase account. On December 17, 1984 the Trustee moved the Bankruptcy Court for an order directing, *inter alia,* Chase to disgorge the funds subject to the hold. The Trustee and Chase agreed to segregate the disputed amount into an escrow account at Chase pending a resolution of the dispute by the Court, whereupon Chase cross-moved the Bankruptcy Court for an order lifting the Code § 362

automatic stay and permitting Chase to offset the Syracuse overdraft against the balance of the Debtor's Manhattan account. In its March 10, 1986 order, the Bankruptcy Court denied the Trustee's motion and granted Chase's cross-motion. This appeal followed.

## II.

The right to setoff is preserved by Section 553 of the Bankruptcy Code, 11 U.S.C. § 553, which reads, in pertinent part: "... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor ... against a claim of such creditor against the debtor that arose before the commencement of the case [under this title] ...".

The Trustee contends on this appeal that the Bankruptcy Court erred in allowing Chase to offset the Syracuse overdraft against the Debtor's Manhattan balance. The Trustee argues that Chase lost its right to setoff the moment it issued the debit and credit advices transferring the Debtor's Manhattan balance to the Trustee's account because as soon as the transfer was complete, the overdraft was no longer a "mutual" debt within the meaning of § 553.

The Trustee relies in part on *In re Royal Crown Bottling Company of Boaz, Inc.,* 29 B.R. 52 (Bankr.N.D.Ala.1981), which observed that:

"Once the bank paid to the Trustee the [balance of the Debtor's account], this debt was no longer owed by the bank to the Debtor in this case, and there was no longer a debt for that sum which it could offset against a debt which the Debtor in this case might then have owed to it. Thus, the [bank's] alleged right to recover said sum from the trustee, upon a right of setoff, collapses, because there was no such right after the bank paid that sum to the Trustee."
*Id.* at 54.

The Bankruptcy Judge in the instant action apparently disagrees with the *Royal Crown* court's statement of the law on the question of when a right to setoff exists. The crucial time, according to Judge Abram, is the date on which the petition for protection under the Bankruptcy Act is filed, not when the right of setoff is sought to be asserted. At the hearing on the motion and cross-motions at issue, Judge Abram stated:

"I do not accept [the principle that a creditor's right to set-off is extinguished by its transfer of funds to the Trustee]. I believe that if on the date the petition was filed, as the account then stood, the bank had a right of set-off, that[,] in the absence of gross laches, [the right to set-off is not extinguished by a transfer of funds to the Trustee].... I don't think that the fact the bank transferred the account is any more than some evidence that the bank didn't then realize that it had a claim ..." Tr. 4, 7.

Judge Abram, in her Memorandum Decision and Order of March 10, 1986, quoted another case relied upon by the Trustee in support of the view that the crucial inquiry was whether a right of setoff existed at the time the petition was filed. She quoted this statement from *In re Mauch Chunk Brewing Company,* 131 F.2d 48, 49 (3rd Cir.1942):

"[Setoff] is a privilege which the creditor may or may not claim. If it is not asserted, it is lost. Likewise if the creditor's conduct is inconsistent with a subsequent claim of set-off, he is held to have waived it."

The possibility of a successful subsequent claim of setoff, which is assumed by the *Mauch Chunk* court, would be absolutely barred under the rule proposed by the Trustee.

The rule proposed by the Trustee—that a debt is no longer "mutual" the instant a creditor completes the necessary paperwork to transfer the amount it owes the debtor to the Trustee—has the appeal of being technically neat and easy to apply. Section 553, however, is not intended to supply technically simple rules for the administration of debtors' estates.

▌ The section exists to preserve the remedy of setoff, a remedy grounded in equity, albeit at odds with the dominant

theme of the bankruptcy code's equal treatment of creditors. Section 553's preservation of the common law of setoff "has the effect of paying one creditor more than another". *Bohack Corp. v. Borden, Inc.*, 599, F.2d 1160, 1165 (2d Cir.1979) (construing § 68 of the predecessor Bankruptcy Act). Despite this inevitable effect, the doctrine of setoff "has long occupied a favored position in our history of jurisprudence." *Id.* at 1164.

The Second Circuit has repeatedly favored the allowance of setoffs, *Id.* at 1165; *In re Applied Logic Corp.*, 576 F.2d 952 (2d Cir.1978), and has noted specifically its reluctance to disturb the Bankruptcy Code's policy of allowing setoffs "unless compelling circumstances require it." *Bohack Corp., supra,* 599 F.2d at 1165. Furthermore, the allowance or disallowance of a setoff is a decision which ultimately rests in the sound discretion of the bankruptcy court. *Ibid.*

 Judge Abram's formulation of the timing question is more in line with proper administration of the Bankruptcy Code than that of the Trustee. As she puts it: "It is contrary to proper administration of the Bankruptcy Code for a trustee to be able to play 'gotcha' with the debtor's banks. The bankruptcy system can function efficiently and effectively only with the cooperation of all concerned." Slip Op. at 3.

Adopting Judge Abram's formulation of the rule, however, does not give banks or other creditors the ability to preserve their right to setoff indefinitely. The doctrine of laches, another creature of equity, may bar a creditor's attempt to assert a right to setoff, as may the doctrine of equitable estoppel. Moreover, under certain circumstances a creditor may be held to have waived its right to setoff.

◼ Judge Abram's decision turned on the obvious, indeed uncontested, fact that Chase did not intend to waive its right of setoff by issuing the "advices" necessary to transfer the Debtor's Manhattan balance

to the Trustee's account. She implicitly found that Chase had issued the advices without knowledge of its then existing right of setoff and without the intention necessary under New York law to waive that right.[1] *See Voest-Alpine International Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 680, 685 (2d Cir.1983) (New York law requires knowledge of the existence of a right and an intention to relinquish it before waiver is established).

*Conclusion*

For the foregoing reasons, the decision of the Bankruptcy Court is affirmed.

---

**1.** Section 553 of the Bankruptcy Code merely preserves the right of setoff. The creation and substance of that right is controlled by state law. *See In re Donato*, 17 B.R. 708, 709 (E.D.Va. 1982); *In re Williams*, 61 B.R. 567 (N.D.Tx. 1986).