**In re WHIMSY, INCORPORATED, Debtor.**

**No. 97 CIV. 9108(RWS).**

United States District Court, S.D. New York.

May 14, 1998.

Mary Jo White, U.S. Atty., Southern District of New York, New York City, by Andrew W. Schilling, Asst. U.S. Atty., for U.S.

Reid & Priest, New York City, by Marc E. Richards, Teena H. Kim, for Debtor.

## OPINION

SWEET, District Judge.

The United States of America (the "Government") appeals from an order by the Bankruptcy Court (the "Order") denying the Government's motion to setoff an obligation owed to the appellee Whimsy, Inc. (the "Debtor") by the United States Department of the Treasury, United States Customs Service ("Customs"), against a debt owed by the Debtor to the United States Department of the Treasury, Internal Revenue Service (the "IRS"). For the reasons set forth below, the Order is reversed.

### Facts and Prior Proceedings

#### I. The Facts

#### A. The Government's Pre–Petition Claims Against the Debtor

On February 26, 1992 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"). As of the Petition Date, the Debtor had outstanding liabilities to two agencies of the Government: (1) the Debtor owed substantial sums to the IRS in connection with pre-petition tax obligations; and (2) the Debtor owed lesser amounts to Customs in connection with pre-petition import duties. Both the IRS and Customs filed proofs of claim and amended proofs of claim with respect to these liabilities in the bankruptcy court.

Specifically, on August 29, 1996, the Government (through the IRS) filed amended proofs of claim numbers 11021 through 11027, inclusive, with respect to the Debtor's tax obligations. The IRS and the Debtor

compromised and settled the IRS claims and, by order dated January 14, 1997, the bankruptcy court approved the settlement agreement reached between the IRS and the Debtor (the "Settlement Agreement"). The Settlement Agreement allowed a claim of the IRS for tax deficiencies totaling approximately $7.7 million (the "IRS Claim").

As of the Petition date, the Debtor was also indebted to Customs for certain unpaid customs duties. On July 15, 1997, the Government (through Customs) filed its most recent amended proof of claim in connection with these customs duties. In that filing, Customs claimed pre-petition obligations of the Debtor to the Government in the amount of $7,456.32 (the "Customs Claim").

Thus, at the time of the Government's setoff motion, the Debtor owed the Government (through the IRS) several million dollars in taxes, and the Debtor owed the Government (through Customs) several thousand dollars in customs duties.

**B. The Government's Pre–Petition Obligation To The Debtor**

As of the Petition Date, the Government also owed money to the Debtor. Specifically, as indicated on the July 15, 1997 amended proof of claim (as well as earlier proofs of claim), Customs owed the Debtor $119,322.80 for refunds that arose prior to the Petition Date (the "Customs Refund"). The Government had not paid the Debtor the Customs Refund as of the Petition Date.

**II. The Bankruptcy Court Decision**

In the bankruptcy court, the Government moved on August 15, 1997, pursuant to 11 U.S.C. § 362(d), for an order lifting the automatic stay to allow the Government to accomplish a setoff whereby (1) the Government would apply part of the $119,322.80 Customs Refund against a $7,456.32 Customs Claim, and (2) the Government would apply the balance of the Customs Refund remaining after the first setoff (i.e., $111,866.48) against the IRS Claim, thereby reducing the IRS Claim by $111,866.48.

On October 8, 1997, The Honorable Cornelius Blackshear issued the Order, granting in part and denying in part the motion. Specifically, the Order permitted the Government to setoff the Customs Refund against the Customs Claim, but not against the IRS Claim. First, the court ruled that allowing the IRS to setoff the Customs Refund against the IRS Claim "would be inequitable" because the Debtor's estate was "administratively insolvent." The court reasoned that allowing the IRS—which was "merely an unsecured creditor"—to effect a setoff would provide the IRS with a payment on its claim while other unsecured creditors received nothing. Second, the bankruptcy court found that a setoff of the Customs Refund against the IRS Claim would "unfairly alter" the Settlement Agreement reached between the Debtor and the IRS.

Third, the bankruptcy court ruled that the "IRS and Customs are not a unitary creditor for purposes of setoff under section 553" of the Bankruptcy Code. Judge Blackshear ruled that Chief Judge Lifland's 1994 decision in *Shugrue v. Fischer (In re Ionosphere Clubs, Inc.)*, 164 B.R. 839 (Bankr.S.D.N.Y. 1994) was "correctly decided," whereas the Second Circuit's subsequent decision in *Aetna Casualty & Surety Co. v. LTV Steel Co. (In re Chateaugay Corp.)*, 94 F.3d 772 (2d Cir.1996), "did not address the issue." Finally, the bankruptcy court found further support for its ruling in the fact that the IRS and Customs identified themselves on their respective proofs of claims as " 'Department of the Treasury—Internal Revenue Service' and 'U.S. Customs Service,' respectively, not 'United States of America,' thus further indicating that the IRS and Customs are different creditors."

On November 12, 1997, the Government filed the instant appeal. The appeal was deemed fully submitted after argument on April 1, 1998.

**Discussion**

**I. Standard of Review**

A district court's review of bankruptcy court orders is plenary. *See Manville Forest Products Corp; Gulf States Exploration Co. v. Manville Forest,* 896 F.2d 1384, 1388 (2d Cir.1990); *Lomas Financial Corp. v. Northern Trust Co. (In re Lomas Financial*

**72**

*Corp.),* 117 B.R. 64, 66 (S.D.N.Y.1990). The court independently reviews the factual findings and the legal conclusions of the bankruptcy court, and "must accept the findings of fact unless they are clearly erroneous," but will reverse if " 'left with the definite and firm conviction that a mistake has been committed.' " *Manville Forest,* 896 F.2d at 1388 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Conclusions of law reached by a bankruptcy court are reviewed *de novo. Id.*

## II. The Government Has A Right To Setoff Its Obligation To The Debtor Against The Debtor's Obligation To The Government

### A. The Government Has A Common-Law Setoff Right Outside The Bankruptcy Context

■ Rooted in the common law, setoff is a creditor's equitable right to deduct a debt it owes to a debtor from a claim it has against the debtor arising out of a separate transaction. "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.' " *Citizens Bank of Md. v. Strumpf,* 516 U.S. 16, 18, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995) (quoting *Studley v. Boylston Nat'l Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913)). *See also Chateaugay,* 94 F.3d at 780 ("The right of setoff is a 'common right, which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.' " *(quoting Gratiot v. United States,* 40 U.S. (15 Pet.) 336, 370, 10 L.Ed. 759 (1841))). By definition, therefore, setoff requires mutuality of parties; that is, the same creditor must hold both a debt to and a claim against the same debtor.

Outside the bankruptcy context, it has long been established that the departments, agencies and subdivisions of the United States Government constitute a single creditor for purposes of setoff. In *Cherry Cotton Mills v. United States,* 327 U.S. 536, 537, 66 S.Ct. 729, 729, 90 L.Ed. 835 (1946), for example, the United States owed the petitioner, Cherry Cotton Mills, a refund of approximately $3,000 for taxes paid under the Agricultural Adjustment Act. At the same time, however, the petitioner owed the Reconstruction Finance Corporation (the "RFC") approximately $6,000 pursuant to a promissory note. The General Accounting Office directed the Treasury Department to pay petitioner's tax refund to the RFC in partial satisfaction of the petitioner's outstanding balance on the loan. When the petitioner sued the United States in the Court of Claims to recover the tax refund, the United States filed a counterclaim for a setoff. In the Supreme Court, the petitioner argued that setoff was inappropriate because its debt was to the RFC, not to the United States Government.

The Supreme Court rejected the Company's argument, recognizing that the Government's right to setoff does not turn upon "whether the Government's interest has been entrusted to its agencies of one kind or another." With respect to the RFC, the Court observed that, like any other government agency, "all of its money comes from the Government; its profits, if any, go to the Government; its losses the Government must bear." *Cherry Cotton Mills,* 327 U.S. at 539, 66 S.Ct. at 730. Accordingly, the Supreme Court held that setoff was proper even though the Treasury Department and the RFC were separate and distinct agencies of the United States. *See also Gratiot,* 40 U.S. at 370 ("The United States possesses the general right to apply all sums due for such pay and emoluments, to the extinguishment of any balances due to them by the defendant, on any other account."); *Malman v. United States,* 202 F.2d 483 (2d Cir.1953) (United States properly setoff debt owed to plaintiff by Department of the Army against plaintiff's tax obligation to Treasury Department).

### B. The United States Is A Unitary Creditor For Purposes of Setoff In Bankruptcy

■ The Bankruptcy Code recognizes and endorses the right to setoff in 11 U.S.C. § 553(a). That section provides, in pertinent part, as follows:

[T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case.

11 U.S.C. § 553(a). "This section does not itself create a right of setoff; rather, it merely preserves setoff rights that exist outside the bankruptcy context." *Chateaugay*, 94 F.3d at 777; *accord Citizens Bank*, 516 U.S. at 18, 116 S.Ct. at 288 ("Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy."). The Government's right to interagency setoff outside the bankruptcy context is well settled; hence, that right was "preserved" in bankruptcy by Section 553(a).

The bankruptcy court below relied on *Ionosphere*. In that case, the court first decided that the fund which the Government sought to offset against was not "a debt owed to the Debtor" but rather was "owned by" Eastern, and therefore is not subject to offset. *Ionosphere*, 164 B.R. at 842. As an alternative ground for decision, the court declined to apply *Cherry Cotton Mills* to the bankruptcy context, and held instead that "one agency should not be able to setoff the claims and debts of another." *Id.* at 843. The court advanced three reasons to arrive at this conclusion. First, the court concluded that "a narrow interpretation of mutuality" is justified to prevent "preferential treatment of creditors," *id.* at 843, and therefore mutuality should be restricted to debts owed to and owing from a single agency. Second, the court interpreted the bankruptcy code section 101(27), which defined "governmental unit" as the "United States; State; ... [or] department, agency, or instrumentality of the United States." The court concluded that this language compelled the result that " 'Congress intended that [governmental] units be treated as distinguishable and therefore not the same creditor within the provisions of the statute.' " *Id.* at 843 (quoting *Illinois v. Lakeside Community Hosp., Inc. (In re Lakeside Community Hosp., Inc.*, 151 B.R. 887, 891 (N.D.Ill.1993)). Finally, the

court also pointed to evidence that "each of the departments and agencies ... have distinct administrative structures" with "different rights and capacities vis a vis [the debtor] )." *Ionosphere*, 164 B.R. at 843.

At the time of the 1994 decision in *Ionosphere*, however, Chief Judge Lifland did not have the benefit of the Second Circuit's decision in *Chateaugay*, which applied *Cherry Cotton Mills* in the bankruptcy context. In *Chateaugay*, the Second Circuit decided that the Government has a common-law right of interagency setoff, permitting the Government to offset a debt owed by one agency, the Department of Labor, against a tax refund owed by the Government. In that case, LTV Steel Corporation (the debtor) was a coal mine operator which was required, under federal law, to pay black lung disability benefits to its employees. Federal law also required coal mine operators such as LTV to either obtain insurance or to self-insure; employers who elected to self-insurer (such as LTV) were required to maintain a surety bond. In addition, federal law provided that the Department of Labor (the "DOL") would pay the benefits when the surety bond became exhausted, but gave the DOL the right to recoup such payments from the employer.

When LTV filed for bankruptcy, Aetna Casualty & Surety Co. (as LTV's surety) paid out black lung benefits until its bond was exhausted; thereafter, the DOL made the payments. In the bankruptcy court, both Aetna and the DOL filed proofs of claim against LTV, seeking to recover the black lung payments each made on behalf of LTV. Aetna filed proofs of claim on its own behalf (as subrogee to any claim the DOL might have) and on behalf of the DOL.

The IRS also filed proofs of claim against LTV in the bankruptcy court, claiming unpaid excise taxes. Although the IRS owed LTV $5.3 million in refunds, LTV's total liability to the IRS far exceeded that refund. As in the instant case, the amount of the debtor's liability to the IRS was the subject of a settlement agreement between the IRS and the Debtor. Aetna objected to that settlement, however, arguing that it had an interest in the tax refunds as subrogee to the

DOL. Specifically, Aetna argued that the DOL had a common-law right to offset the black lung payments owed by LTV to the DOL against the tax refund owed by the IRS to LTV; as the DOL's subrogee, Aetna claimed that right. The bankruptcy court and the district court disagreed, holding that the DOL had no common-law right in the tax refund.

The Second Circuit reversed. The narrow issue before the Court was whether the DOL possessed a right in bankruptcy to setoff amounts owed to the debtor by the IRS against amounts owed by the debtor to the DOL. Relying upon *Cherry Cotton Mills* and the Tenth Circuit's decision in *Luther v. United States*, 225 F.2d 495 (10th Cir.1954), the Second Circuit held that the "DOL possesses a common law right to setoff its non-tax debts against tax refunds." *Chateaugay*, 94 F.3d at 779. Because Aetna was subrogated to the rights of the DOL, Aetna had an interest in the tax refunds.

The Ninth and Tenth Circuits have also applied *Cherry Cotton Mills* to the bankruptcy context and held that the agencies, departments and subdivisions of the United States Government constitute a single, unitary creditor for purposes of setoff in bankruptcy. *See, e.g., Hal, Inc. v. United States (In re Hal, Inc.)*, 122 F.3d 851, 852–54 (9th Cir.1997) (Applying *Cherry Cotton Mills*, and holding that "the various agencies of the federal government constitute a single 'governmental unit' for purposes of setoff under § 553 of the bankruptcy Code"); *Turner v. Small Business Admin. (In re Turner)*, 84 F.3d 1294, 1299 (10th Cir.1996) (en banc) ("Because we hold that the United States is a unitary creditor in bankruptcy, it, like any other single creditor, should be entitled to offset any mutual debts it has involving multiple agencies in accordance with § 553.").

■ *Chateaugay* is controlling here. Accordingly, government agencies are a single unitary creditor entitled to setoff for purposes of § 553. This, however, does not dispose of the appeal. As discussed below, the right to setoff, although favored, is not absolute and, in the exercise of sound discretion, may be denied under compelling circumstances.

## III. *The Bankruptcy Court Erred To The Extent It Denied The Government's Setoff Motion As "Inequitable"*

■ The Second Circuit has held:

The rule allowing setoff, both before and after bankruptcy, *is not one that courts are free to ignore when they think application would be "unjust."* It is a rule that has been embodied in every bankruptcy act the nation has had, and creditors ... have long acted in reliance upon it.

*New Jersey Nat'l Bank v. Gutterman (In re Applied Logic Corp.)*, 576 F.2d 952, 957–58 (2d Cir.1978) (emphasis added) (Friendly, J.). Thus, a court should enforce the remedy of setoff unless "compelling circumstances" require the disallowance of a setoff. *Bohack Corp. v. Borden, Inc. (In re Bohack Corp.)*, 599 F.2d 1160, 1165 (2d Cir.1979); *see also Scherling v. Chase Manhattan Bank (In re Tilston Roberts Corp.)*, 75 B.R. 76, 79 (S.D.N.Y.1987) ("The Second Circuit has repeatedly favored the allowance of setoffs and has noted specifically its reluctance to disturb the Bankruptcy Code's policy of allowing setoffs 'unless compelling circumstances require it' ") (citations omitted). Compelling circumstances may be present where there is a "serious and immediate threat to the debtor," *Niagara Mohawk Power Corp. v. Utica Floor Maintenance, Inc. (In re Utica Floor Maintenance, Inc.)*, 41 B.R. 941, 944–45 (N.D.N.Y.1984), or where the creditor has engaged in criminal conduct or fraud. *See Blanton v. Prudential–Bache Sec., Inc. (In re Blanton)*, 105 B.R. 321, 337–38 (Bankr. E.D.Va.1989) ("Most cases in which courts have exercised discretion to deny setoff outright have involved creditors who engaged in illegal or fraudulent conduct.").

The bankruptcy court cited several factors for exercising discretion to disallow the setoff. Most of these factors were based upon the erroneous conclusion that inter-agency setoff was not allowed as a matter of law. As discussed below, none of the remaining factors relied upon by the bankruptcy court amount to compelling circumstances in this

case. Accordingly, the exercise of discretion to disallow the setoff was improper.

### A. *Administrative Insolvency*

■ Noting that the Debtor's estate is "administratively insolvent," Judge Blackshear reasoned that allowing a setoff of the Customs Refund against the IRS Claim would unfairly prefer the IRS over other unsecured creditors. The administrative insolvency of the Debtor's estate, however, does not necessarily render a setoff inequitable; indeed, Congress itself recognized that the allowance of setoff may be particularly *appropriate* where, as here, setoff would not interfere with a debtor's efforts to reorganize:

In a liquidation case, any setoff that occurs after the commencement of the case has no effect on the debtor. The amount that the creditor recovers through setoff will permit him to recover a higher percentage of his total claim than other creditors, but it will not interfere with the debtor's operation or business in any way, because the debtor has already gone out of business.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 183–84, *reprinted in* 1978 U.S.C.A.A.N. at 6144–45. Allowing a setoff in this case could not possibly have interfered with the operation of the Debtor's business since the Debtor's efforts at reorganization had already failed and the court had already approved the sale of the Debtor's assets.

### B. *Unfair Preference*

■ The bankruptcy court also expressed the concern that a Customs–IRS setoff would unfairly prefer the IRS over other unsecured creditors. This, however, ignores the fact that inequality among creditors is inherent in the very nature of setoff. *See Applied Logic,* 576 F.2d at 957 (while the "dominant impulse" of bankruptcy is equal treatment of creditors, the "dominant impulse" of setoff "is inequality among creditors"); *Scherling,* 75 B.R. at 78–79 (remedy of setoff "is at odds with the dominant theme of the bankruptcy code's equal treatment of creditors").

Thus, the argument that setoff should be denied to avoid the inequity of preferential treatment is an argument against the very concept of setoff, not an argument against its application to the facts of this case. *See New York County Nat'l Bank v. Massey,* 192 U.S. 138, 24 S.Ct. 199, 48 L.Ed. 380 (1904) ("If this argument were to prevail, it would, in cases of insolvency, defeat the right to setoff recognized and enforced in the law, as every creditor of the bankrupt holding a claim against the estate subject to [setoff] receives a preference in the fact that, to the extent of the setoff, he is paid in full."). As one court explained:

Unsecured creditors generally have to settle for receiving a small percentage of the sum they are owed, sometimes as little as a few cents on the dollar. The creditor who asserts a setoff, by contrast, is paid 100% of its claim (at least up to the value of the setoff). This differential treatment contradicts the general policy of the bankruptcy laws, which is to treat the same class of creditors equally.

*Whatever the merits of this argument, it is an argument against allowing setoffs in bankruptcy at all. We cannot give weight to such arguments, because section 553 makes it clear that Congress intended to preserve the right to a setoff.*

*Carolco Television Inc. v. Nat'l Broad. Co. (In re DeLaurentiis Entertainment Group, Inc.),* 963 F.2d 1269, 1277 n. 18 (9th Cir.1992) (underline added; italics in original). Indeed, by granting the Government's motion to setoff the Customs Refund against the Customs Claim, the bankruptcy court itself accomplished such an "inequitable" result since Customs (*i.e.,* merely another unsecured creditor) would be paid on its claim in full (out of the proceeds of the Customs Refund).

### IV. *The Settlement Agreement Is Consistent With The Setoff Right*

■ Debtor contends that denial of the setoff is consistent with the terms of the Settlement Agreement entered into between the IRS and the Debtor, dated September 6, 1996, and approved by an order as amended of the bankruptcy court dated January 14, 1997. Debtor contends that the IRS was aware of the Customs Refund due to the Debtor throughout the span of the negotia-

tions, and that the IRS never indicated an intention to offset its claim against the Customs Refund.

Debtor, however, points to no term of the Settlement Agreement restricting the Government's right to setoff. Debtor concedes as much by acknowledging that the settlement negotiations solely addressed the liabilities of the Debtor to the IRS. Indeed, counsel for the Debtor conceded to Judge Blackshear during oral argument and in the opposition memorandum in the instant appeal that the Debtor had expressly refused to address setoff of the Customs Refund in the IRS Settlement Agreement, preferring instead to deal with that separate issue by motion.

The Debtor cites *In re Holder,* 182 B.R. 770, 776 (Bankr.M.D.Tenn.1995) to support their contention that setoff was properly denied in light of the Settlement Agreement reached between the Debtor and the IRS. In *Holder,* the bankruptcy court for the Middle District of Tennessee held that Customs had waived its right of setoff by entering into an agreement with the trustee settling its claim against the debtor (the "Agreed Order"). *See Id.* at 776. Specifically, the court found that Customs "consented [in the Agreed Order] to be bound to the Plan as a Class 18 claimant, and that it agreed that **all distributions** relative to its Class 18 claim were to be made *only through the terms* of the plan." *Id.* at 777 (bold in original; emphasis added). Because Customs had agreed to be paid on its claim only pursuant to the plan of reorganization, the court held that Customs had waived any right to recover on that claim by way of setoff. *See id.*

Here, in contrast, neither Customs nor the IRS has done anything that would waive the Government's right to retain the Customs Refund in partial satisfaction of the IRS Claim. Both the Settlement Agreement and the bankruptcy court's order approving the Settlement Agreement expressly provided that the IRS Claim would be an allowed claim. In addition, the order expressly and unequivocally provided that "the underlying liabilities to the IRS of the Debtors … are not extinguished." Furthermore, while the Agreed Order in *Holder* had expressly limit-

ed Customs to payments under the plan of reorganization, the order approving the Settlement Agreement in this case did not: To the contrary, it expressly provided that "if the Debtor fails to make any of the payments provided for in the Settlement Agreement, the Debtors … shall remain liable to the IRS to the extent of the unpaid balance…." In short, nothing in the Settlement Agreement (or the order approving the Agreement) demonstrates an intent on the part of the IRS to waive its right to receive payment on its claims. Therefore, the Government did not waive its right of offset in the Settlement Agreement.

Accordingly, the Settlement Agreement does not preclude the Government from collecting the tax liability by retaining the Customs Refund.

### Conclusion

For the reasons set forth above, the Order is reversed and the case is remanded for further proceedings.

It is so ordered.