146 F.3d 739
 82 A.F.T.R.2d 98-5118, 32 Bankr.Ct.Dec. 977,
Bankr. L. Rep. P 77,732,
98 Cal. Daily Op. Serv. 5065,
98 Cal. Daily Op. Serv. 7876,
98 Daily Journal D.A.R. 10,934,
98 Daily Journal D.A.R. 7040,
2 Cal. Bankr. Ct. Rep. 36
 In re: UNITED MARINE SHIPBUILDING, INC., Debtor.
Michael B. McCARTY, as Trustee for United Marine
Shipbuilding, Inc., Plaintiff-Appellee,
v.
NATIONAL BANK OF ALASKA, N.A., Defendant-Appellant.
In re: UNITED MARINE SHIPBUILDING, INC., Debtor.
Michael B. McCARTY, as Trustee for United Marine
Shipbuilding, Inc., Plaintiff-Appellant,
v.
NATIONAL BANK OF ALASKA, N.A.; Department of
Transportation, acting by and through; Maritime
Administration, Defendants-Appellees.
 Nos. 97-35502, 97-35589.
 United States Court of Appeals,
Ninth Circuit.
 Argued June 1, 1998.
Decided June 26, 1998.
 
 Ronald T. Schaps, Bogle & Gates, Seattle, Washington, for defendant-appellant-cross-appellee National Bank of Alaska.
 Michael B. McCarty, North Bend, Washington, for the plaintiff-appellee-cross-appellant.
 Beth E. Cook, James J. Faughnan, Civil Division, Department of Justice, Washington, DC, for defendant-appellee United States Department of Transportation.
 Appeal from the United States District Court for the Western District of Washington; Carolyn R. Dimmick, District Judge, Presiding. D.C. No. CV 96-01304-CRD.
 Before: LAY,* GOODWIN and PREGERSON, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 This appeal arises out of an adversary proceeding in the United Marine Shipbuilding Inc.'s ("UMSI") bankruptcy case. Three parties are making competing claims to a tax refund that the Internal Revenue Service ("IRS") paid by mistake to Michael B. McCarty, the Trustee for UMSI (the "Trustee").
 
 
 2
 On cross-motions for summary judgment, the bankruptcy court held that the United States Department of Transportation acting by and through the Maritime Administration ("MARAD") could apply its prior court-approved setoff against this tax refund even though the IRS had already disbursed the tax refund to the Trustee. The district court affirmed.
 
 
 3
 The Trustee and the National Bank of Alaska ("NBA") now appeal. The Trustee argues that MARAD effectively waived its setoff rights when possession of the tax refund moved to the Trustee and that the tax refund has always belonged to the bankruptcy estate and has not been abandoned or vested in any third parties. NBA, which held a security interest in UMSI's general intangibles, including any tax refunds, argues that MARAD cannot claim a setoff against funds that are no longer in the government's possession, that the Plan of Reorganization clearly precludes the bankruptcy estate from receiving the tax refund, and that NBA is entitled to the tax refund by virtue of its security interest. We have jurisdiction under 28 U.S.C. § 158(d). We affirm.
 
 I.
 
 4
 The Debtor, UMSI, is a corporation that was created in connection with the Chapter 11 reorganization proceedings filed in 1986 by WFI Industries, Inc., Marine Power and Equipment, Inc., Marine Logistics Corporation, Alaska Marine Towing, Inc., Service Specialties, Inc., and Propulsion Systems, Inc. (collectively the "Original Debtors"). On August 8, 1988, Judge Volinn of the United States Bankruptcy Court in the Western District of Washington approved the Original Debtors' Third Revised Joint Plan of Reorganization (the "Plan"). The Plan created three reorganized companies (collectively referred to as the "Reorganized Debtors") in which the business and assets of the Original Debtors, as set forth in the Plan, were to be vested. These newly created companies were: Unimar International, Inc. ("UII"), the new parent company; UMSI, a subsidiary of UII organized to conduct the Original Debtors' shipyard operations; and United Marine Tug & Barge Co. ("UMTB"), another subsidiary of UII organized to conduct the Original Debtors' tug and barge operations.
 
 
 5
 At the time of filing, MARAD was owed approximately $72 million by one of the Original Debtors. MARAD had taken a security interest in some of the Original Debtors' marine vessels but had not taken a security interest in any of their intangibles. In the bankruptcy court, MARAD argued that there was sufficient mutuality between it and the IRS to pursue a private, common law setoff against a tax refund owed by the IRS to the Original Debtors.
 
 
 6
 NBA disputed MARAD's claim to the tax refund. NBA claimed it was actually entitled to the tax refund owed to the Original Debtors by virtue of its security interest. In early 1985, NBA extended a $10 million line of credit to some or all of the Original Debtors. At the time of the Original Debtors' Chapter 11 filing, NBA had a perfected security interest in all of the Original Debtors' general intangibles, including any tax refunds to which any of the Original Debtors were entitled. NBA was owed approximately $10 million on the date of filing.
 
 
 7
 On February 12, 1988, Judge Volinn issued an opinion holding that MARAD had sufficient mutuality with the IRS to assert a common law setoff. Judge Volinn's opinion was appealed to the district court. However, on August 3, 1988, before the district court had ruled on the mutuality issue, the bankruptcy court approved the Plan.
 
 
 8
 The text of the Plan directed the Original Debtors to deliver to NBA all prepetition inventory, prepetition accounts receivable and prepetition general intangibles. The transfer was to occur on or after the effective date of the Plan without any further action on the part of the Debtor, any Reorganized Debtor, or any other person.
 
 
 9
 The Plan had a separate section detailing the treatment of prepetition taxes. This section essentially stated that the tax refund would be paid out to either MARAD or NBA, depending on how the court determined their respective rights. Specifically, it provided:
 
 
 10
 Withholding taxes owed by WFI and subsidiaries will be offset by the tax refund owed to Debtors which the IRS agrees is far in excess of its withholding tax claim. The disposition of the balance of the tax refund is subject to a dispute between MARAD and NBA, but in any event UII will not receive the balance of the offset amount.[1]
 
 
 11
 In November of 1988, Kathleen R. Dunn, an employee of MARAD, spoke to Mr. Fred Rawley at the IRS and informed him that the bankruptcy court had determined that MARAD was entitled to the amount of the Original Debtors' tax refund to the extent that the amount exceeded any amounts already owing to the IRS. On December 3, 1988, she drafted a letter to Mr. Rawley on behalf of her supervisor, confirming the right to setoff. Attached to the letter were copies of the Memorandum of Decision and the Final Judgment entered by the bankruptcy court. No taxpayer identification numbers were included in the letter, but MARAD did include an address to which the tax refunds should be sent.
 
 
 12
 On March 29, 1989, the district court affirmed the bankruptcy court's ruling on the mutuality issue. Because by that time the Plan had already been confirmed and the automatic stay had been lifted, MARAD became entitled to exercise its setoff right thirty days from the date the district court entered its order. However, the IRS had not yet determined the amount of the tax refund owing to the Original Debtors so MARAD could not yet exercise its setoff.
 
 
 13
 On January 21, 1994, UMSI filed its own Chapter 11 bankruptcy petition. The case was converted to Chapter 7 on April 15, 1994. Michael B. McCarty (the "Trustee") was appointed trustee for UMSI on April 21, 1994. On January 2, 1995, the Trustee received two checks from the IRS, representing the tax refund at issue in the Original Debtors' bankruptcy.[2]
 
 
 14
 During the UMSI bankruptcy proceedings, NBA and MARAD made competing claims to the tax refund. The Trustee also claimed entitlement to the tax refund on behalf of the bankruptcy estate. Consequently, the Trustee commenced an action in the bankruptcy court to determine entitlement to the tax refund.
 
 
 15
 MARAD presented evidence to the bankruptcy court that the IRS mistakenly released the tax refund to the Trustee for UMSI. James Landerdahl, a Special Procedures Insolvency Advisor for the IRS, stated, by declaration, that the IRS inadvertently removed computer controls freezing the tax refund when UMSI's bankruptcy was converted from Chapter 11 to Chapter 7. Neither the Trustee nor NBA challenged the IRS' explanation of how the tax refunds were released, or MARAD's claim that the release was inadvertent.
 
 
 16
 MARAD filed a motion for summary judgment and NBA and the Trustees filed cross-motions for summary judgment. On July 9, 1996, the bankruptcy court entered judgment in favor of MARAD. The bankruptcy court concluded that because the release of the tax refund by the IRS was a mistake, MARAD had not lost its right to exercise its setoff against the tax refunds. The court directed the Trustee to pay over the tax refund to MARAD. The court held that the Trustee had no valid claim to the tax refund because the Original Debtors' Reorganization Plan stated that the tax refund was not to go to the Debtors but was to be disbursed to MARAD or NBA, depending on how their respective rights were determined by the district court. The court held that NBA had no valid claim to the tax refunds because MARAD had not lost its superior right of setoff. The court noted without findings that NBA's security interest had lapsed due to nonrenewal prior to UMSI's bankruptcy filing.
 
 
 17
 On April 15, 1997, the district court affirmed the bankruptcy court's decision. The court held that MARAD established its intent to setoff a debt and acted on that intent by litigating its setoff right in the bankruptcy court and then in the district court. The court found that setoff was accomplished with the bankruptcy court approval of the reorganization plan when the funds were still in the possession of the government. The court noted that the district court affirmed the bankruptcy court's finding of mutuality between the IRS and MARAD. The court concluded that the IRS' release of the tax refund to the Trustee was an error, that it did not indicate an unequivocal intent on the part of the government to relinquish government property, and that the erroneous payment could be recovered and returned to MARAD.
 
 
 18
 On May 13, 1997, NBA filed a timely notice of appeal. On May 29, 1997, the Trustee filed a timely notice of cross appeal.
 
 II.
 
 19
 A. NBA's Claim to the Tax Refund.
 
 
 20
 We hold that the tax refund was not included amongst the prepetition general intangibles that were turned over to NBA pursuant to the Original Debtors' Reorganization Plan because NBA's security interest had not attached to the tax refund at the time the Plan was confirmed. Attachment can only occur in favor of the secured party once the debtor has rights in the collateral. See Food Services of America v. Royal Heights, Inc., 69 Wash.App. 784, 850 P.2d 585, 589 (1993), aff'd, 123 Wash.2d 779, 871 P.2d 590 (1994). The Original Debtors did not have rights in the tax refund until January 2, 1995, when the IRS determined the amount of the available tax refund. See Bank of the West v. Commercial Credit Fin. Serv., 852 F.2d 1162, 1166-67 (9th Cir.1988)(holding creditor with preexisting security interest in debtor's inventory and accounts did not acquire rights in inventory and accounts of business owned by debtor until the business had been transferred to the debtor).
 
 
 21
 NBA admits on appeal that on or about April 4, 1989, well before both UMSI's bankruptcy filing and the date the IRS issued the tax refunds to the Trustee, NBA's security interest in general intangibles lapsed due to nonrenewal of its financing statement at the Washington State Department of Licensing. It has been established that when a debtor files a new bankruptcy, after confirmation of a plan of reorganization in a prior bankruptcy, all claims are determined by their status at the time of the second filing. See In re Larsen, 59 F.3d 783, 786-87 (8th Cir.1995). Accordingly, we hold NBA cannot assert a priority claim against the tax refund by virtue of its prior security interest in the Original Debtors' general intangibles. An interest which lapses due to the failure to file a continuation statement becomes unperfected as against all other interests. See Morse Electro Products Corp. v. Beneficial Indus. Loan Co., 90 Wash.2d 195, 579 P.2d 1341, 1343 (1978).
 
 
 22
 B. MARAD's Claim to the Tax Refund.
 
 
 23
 There is no question that MARAD had a valid right of setoff. This issue was decided by the bankruptcy court on February 12, 1988 and was affirmed by the district court on March 29, 1989. The parties never appealed this issue to this court. Therefore, the only issue before us is whether MARAD validly exercised its right of setoff or whether it lost that right as a result of the IRS' inadvertent payment of the tax refund to the Trustee.
 
 
 24
 The Supreme Court has held that to effectuate a right of setoff, a party must manifest an intent to permanently settle accounts. Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 19, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). Generally, a party must take the following three steps:
 
 
 25
 (1) Make a decision to effectuate a setoff;
 
 
 26
 (2) Take some action accomplishing the setoff; and
 
 
 27
 (3) Record the setoff.
 
 
 28
 Id.
 
 
 29
 In the instant case, MARAD clearly manifested an intent to settle accounts with the Original Debtors and acted on that intent when it sought a determination in the Original Debtors' bankruptcy proceeding that it had sufficient mutuality with the IRS to pursue a private, common law right of setoff against a tax refund owed by the IRS to the Original Debtors. The bankruptcy court ultimately determined that MARAD did have sufficient mutuality with the IRS to pursue a setoff. This decision was rendered while the tax refund was still in the IRS' possession. MARAD subsequently contacted an agent of the IRS to give the IRS notice of its right of setoff. MARAD followed up with a letter to the IRS which included the memorandum of decision and the final judgment of the bankruptcy court and an address to which the tax refund should be sent. When the Trustee and NBA appealed the decision of the bankruptcy court to the district court, MARAD reaffirmed its intent to exercise its right of setoff in defending the bankruptcy court's judgment. The district court rendered its judgment of affirmance after the date the Plan was confirmed and the automatic stay was lifted. However, MARAD could not yet collect the refund from the IRS because the IRS had not yet determined the value of the available tax refund.
 
 
 30
 Later, on January 2, 1995, after UMSI filed for Chapter 11 bankruptcy and the case was converted to Chapter 7, the IRS did determine the value of the tax refund and disbursed the full amount of the tax refund to the Trustee after deducting overdue withholding taxes. MARAD presented uncontradicted evidence at trial that the IRS inadvertently disbursed the tax refund instead of honoring MARAD's entitlement to the refund.
 
 
 31
 Notwithstanding, the Trustee and NBA now argue that MARAD has lost its right of setoff. The Trustee argues that MARAD waived its right of setoff when the IRS inadvertently disbursed the funds to the Trustee on behalf of the bankruptcy estate. NBA asserts that a setoff cannot be accomplished because MARAD lost possession of the funds before the setoff was effectuated. Both of these arguments amount to the same thing. The possessory fund argument merely states the result of the application of the waiver doctrine. Once a creditor waives its right to assert a setoff by voluntarily releasing funds, it loses possession of the funds.
 
 
 32
 After reviewing the relevant case law, we hold that the doctrine of waiver may not be applied to extinguish MARAD's right of setoff absent proof that the government's disbursement of the tax refund to the Trustee was a voluntary or intentional relinquishment of MARAD's right of setoff. See In re Lanny Jones Welding & Repair, 106 B.R. 446 (Bankr.E.D.Va.1988); In re Krieger Steel Sections, Inc., 103 F.Supp. 351 (E.D.N.Y.1951), aff'd sub nom. Chassen v. United States, 207 F.2d 83 (2nd Cir.1953), and In re Tilston Roberts Corp., 75 B.R. 76, 79 (S.D.N.Y.1987). The bankruptcy court in this case clearly found that the IRS's disbursement of the tax refund to the Trustee was a mistake. The Trustee and NBA failed to contest this finding in the bankruptcy court or the district court, and thus, should not be permitted to challenge this finding on appeal to this court. Because we find no other evidence in the record supporting a finding that MARAD voluntarily or intentionally relinquished its right of setoff, we conclude that the district court did not err in granting summary judgment in favor of MARAD.
 
 
 33
 None of the cases cited by the NBA or the Trustee require a different result. In all of those cases, the court found a waiver of the creditor's right of setoff only because the creditor released the funds against which the setoff could be made before asserting any right of setoff, in court or otherwise. See In re Gehrke, 158 B.R. 465 (Bkrtcy.N.D.Iowa 1993)(holding bank's failure to assert right of setoff at time of turning over proceeds of debtor's bank accounts to the Trustee barred bank from asserting a right of setoff a year and a half later); In re Cloverleaf Farmers Co-Operative, 114 B.R. 1010 (Bkrtcy.D.S.D.1990)(denying SBA right of offset against funds disbursed to the debtor by the Agricultural Stabilization and Conservation Service because the action for offset was brought in court after funds had been released); In re Wilson, 49 B.R. 19 (Bkrtcy.N.D.Tex.1985) (holding SBA waived any claim it might have had to a setoff by not asserting a setoff right until after the IRS had disbursed the funds to the Trustee); and In re Royal Crown Bottling Co. of Boaz, Inc., 29 B.R. 52 (Bkrtcy.N.D.Ala.1981) (holding bank's right of setoff was extinguished because bank failed to assert its right of setoff before voluntarily disbursing debtor's account balance to the Trustee).[3]
 
 
 34
 In this case, by contrast, MARAD asserted its right of setoff in court and gave notice to the IRS of its right of setoff well before the IRS ever disbursed the tax refund to the Trustee. Since asserting its right of setoff, MARAD has not taken any affirmative action inconsistent with its right of setoff. See In re Holder, 182 B.R. 770 (Bkrtcy.M.D.Tenn.1995)(holding that by affirmatively entering into agreed order with Chapter 11 trustee settling its claims, the United States Custom Service acted inconsistently with its right of setoff and thereby waived its right of setoff against a tax refund owed by the IRS to the debtor). Accordingly, we hold that the IRS' inadvertent release of the tax refund to the Trustee does not preclude MARAD from asserting its right of setoff. The Trustee, having mistakenly received the tax refund, is now "liable ex acquo et bono" to return it to the government. DiSilvestro v. United States, 405 F.2d 150, 155 (2nd Cir.1968).[4]
 
 
 35
 C. The Trustee's Claim to the Tax Refund.
 
 
 36
 Although the Confirmation order states that any property of the Original Debtors not disposed of under the plan will vest in the Reorganized Debtors, we hold the tax refunds were disposed of under the Plan. The Plan gave the refund to either MARAD or NBA, subject to the district court's determination. The Plan provided that the refund would not, in any circumstances, go to the Reorganized Debtors. Therefore, the Reorganized Debtors, including UMSI, did not obtain any right to the tax refund of the Original Debtors after the confirmation of the Plan.
 
 
 37
 AFFIRMED.
 
 
 
 *
 Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 This treatment of the tax refunds is identically stated in the Original Debtors' Disclosure Statement. It provides:
 The debtor does not contest its payroll tax obligations which are estimated by the IRS to be $955,295.58. Payment will be made from an income tax refund owed to the Debtors which the IRS has agreed is worth at least $1.2 million. The balance of the refund is subject to a dispute between NBA (who claims the refund as a general intangible) and MARAD (who claims NBA did not perfect its claim) and will not be available to the debtors.
 
 
 [2]
 These checks were in the amounts of $818,173.84 and $201,399.01
 
 
 [3]
 The bankruptcy court opinion notes that the most difficult case to distinguish is In re McCormick, 1993 WL 246001 (D.Kan.1993). In that case, the Farmers Home Association timely asserted a right of setoff against funds that the Agriculture Stabilization and Conservation Service owed to the debtor. Id. at * 1. Subsequently, the Agriculture Stabilization and Conservation Service disbursed these funds to the Trustee of the debtor's bankruptcy estate. Id. In denying the Farmers Home Association its right of setoff, the court found that the Agriculture Stabilization and Conservation Service's disbursement was made voluntarily and without reservation. Id. at * 3. The result in this case might have been different, however, if the Farmers Home Association had made the argument that the payment by the Agriculture Stabilization and Conservation Service was made by mistake
 
 
 [4]
 MARAD was not obligated to comply with 26 U.S.C § 6402 or IRS regulation 26 C.F.R. § 301.6402-6 in asserting its right of setoff. The right of setoff may generally be exercised under common law